## NUTT v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 1380.　Submitted April 2, 1888. — Decided April 16, 1888.

Congress enacted August 7, 1882, 22 Stat. 734, " that the Quartermaster General of the United States is hereby authorized to examine and adjust the claims of Julia A. Nutt, widow and executrix of Haller Nutt, deceased, late of Natchez; in the State of Mississippi, growing out of the occupation and use by the United States Army during the late rebellion, of the property of said Haller Nutt during his lifetime, or of his estate after his decease, including live stock, goods, and moneys, taken and used by the United States or the armies thereof; and he may consider the evidence heretofore taken on said claim, as far as applicable, before the Commissioners of Claims, and such other evidence as may be adduced before him on behalf of the legal representatives of Haller Nutt or on behalf of the United States, and shall report the facts to Congress to be considered with other claims reported by the Quartermaster General." The Quartermaster General made the examination and reported to Con-

gress the aggregate value of the property taken. *Held,* that this refer-
ence of the claim did not constitute a submission to arbitration on the
part of Congress, and that the finding of the Quartermaster General was
neither an award, nor the equivalent of an account stated between
private individuals.

Some time after this report of the Quartermaster General, Congress appro-
priated sundry amounts to various persons named in the bill as "an
allowance of certain claims reported by the accounting officers of the
United States Treasury Department," "the same being in full for, and
the receipt for the same to be taken and accepted in each case as a full
and final discharge of the several claims examined and allowed." Among
these amounts was an appropriation to Mrs. Nutt of an amount much
less than that reported by the Quartermaster General, which reduced
amount she accepted. *Held,* that this did not amount to an adoption by
Congress of the report of the Quartermaster General, and that there was
no inference that the appropriation actually made was intended to be a
recognition of a larger amount as due.

THE case is stated in the opinion of the court.

*Mr. Martin F. Morris* for appellant.

*Mr. Attorney General* and *Mr. Heber J. May* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

An act of Congress, approved August 7, 1882, for the re-
lief of Julia A. Nutt, widow and executrix of Haller Nutt,
deceased, 22 Stat. 734, declared: "That the Quartermaster
General of the United States is hereby authorized and directed
to examine and adjust the claims of Julia A. Nutt, widow
and executrix of Haller Nutt, deceased, late of Natchez, in
the State of Mississippi, growing out of the occupation and
use by the United States Army, during the late rebellion, of
the property of the said Haller Nutt during his lifetime, or of
his estate after his decease, including live stock, goods, and
moneys taken and used by the United States or the armies
thereof; and he may consider the evidence heretofore taken
on said claim, so far as applicable, before the Commissioners
of Claims, and such other legal evidence as may be adduced
before him in behalf of the legal representatives of Haller
Nutt, deceased, or in behalf of the United States, and shall

report the facts to Congress to be considered with other claims reported by the Quartermaster General: *Provided*, That no part of said claims, upon which said Commissioners of Claims have passed on the merits, shall be considered by the Quartermaster General.

On December 22, 1882, the Quartermaster General, acting under and pursuant to this act, reported to Congress, through the Secretary of War, that he had examined the claims of Mrs. Julia A. Nutt, as widow and executrix, and the nature and manner of his investigation, and the circumstances and evidence relating to the same. He further reported as follows: "All the evidence considered, as well as the additional information I have been able to gather, warrants me in recommending that Julia A. Nutt be paid the following items, which, in my judgment, are sufficiently proved by the evidence, viz.:" He then states various items of property with their value, the total amounting to $256,884.05. This report was transmitted direct by the Secretary of War to Congress, but was not transmitted to or acted upon by the accounting officers of the Treasury. On July 5, 1884, Congress passed an act, 23 Stat. 552, "for the allowance of certain claims reported by the accounting officers of the United States Treasury Department, and for other purposes." This statute enacts: "That the Secretary of the Treasury be, and he is hereby, authorized and required to pay, out of any money in the Treasury not otherwise appropriated, to the several persons in this act named, the several sums mentioned herein, the same being in full for, and the receipt of the same to be taken and accepted in each case as a full and final discharge of the several claims examined and allowed by the proper accounting officers under the provisions of the act of July fourth, eighteen hundred and sixty-four, since January sixth, eighteen hundred and eighty-three, namely:" Then follows a list of the names of the persons, with the amount payable to each, under the head of the several States of Tennessee, Kentucky, West Virginia, Indiana, Pennsylvania, Ohio, Maryland, Missouri, District of Columbia, Colorado, Illinois, Indian Territory, Iowa, Kansas, and, finally, under the head of Mis-

sissippi, as follows: "To Julia A. Nutt, widow and executrix of Haller Nutt, deceased, of Adams County, the sum of $35,556.17." This amount was paid to and accepted by the claimant. The payment and receipt of this sum under the act of July 5, 1884, however, it is contended, does not operate as a full and final discharge of her claim against the government, because it is not within the description contained in the act of "claims examined and allowed by the proper accounting officers under the provisions of the act of July 4, 1864.". The right to recover the full amount of the claim, after deducting this payment, is rested by counsel for the claimant upon the act of August 7, 1882, and is based upon the following propositions:

1st. The reference of the claim by Congress, with the consent of the claimant, to the Quartermaster General constituted, under the special provisions of the act of reference, a submission to arbitration, and the Quartermaster General's conclusion or finding was an award pursuant to arbitration, upon which suit can be maintained.

2d. If the reference to the Quartermaster General, and the finding by him, do not constitute an arbitration and award, they are at least the equivalent of an account stated between private individuals.

3d. Even if of itself the finding of the Quartermaster General did not constitute an account stated, it became such by its acceptance by Congress and the appellant.

There is nothing, however, in the language of the act of August 2, 1882, to justify the inference that the finding reported by the Quartermaster General is an award in pursuance of an arbitration. On the contrary, the terms of the act distinctly negative that idea. There is no recital of a mutual submission by the parties of any controversy to an arbitrator. The Quartermaster General was authorized and directed by Congress to, examine and adjust the claims in question, but not for the purpose of settling and adjudging any controversy in relation thereto between the United States and the claimant. He was required to report the facts to Congress, not to publish an award to the parties; and the object for which his report

was required was that the claim should be "considered with other claims reported by the Quartermaster General." This report evidently is purely for the information of Congress itself, in order that it, being thus advised, might thereafter deal with the claim as in its judgment should seem best.

On this point the language of this court in *Gordon* v. *United States*, 7 Wall. 188, 195, is applicable. It was there said : "The various acts and resolutions of Congress in this case emanated from a desire to do justice and to obtain the proper information as a basis of action, and were not intended to be submissions to the arbitrament of the accounting officer. They were designed as instructions to the officer by which to adjust the accounts, Congress reserving to itself the power to approve, reject, or rescind, or to otherwise act in the premises as the exigencies of the case might require. In other words, these references only require the officer to act in a ministerial, not a judicial, capacity."

To the same effect is the case of *Chorpenning* v. *United States*, 94 U. S. 397, 398. It was there said : "The resolution relied upon by the appellant was wholly unilateral. It contained no stipulation of payment, express or implied. Congress, for its own reasons, simply directed an examination and adjustment. It gave no promise, and came under no obligation to the other party, and asked and received none from him. The government and the claimant stood, and continued to stand, wholly independent of each other. The government could at any time before payment recall what it had done, and the claimant was at liberty up to the same period to refuse concurrence and assert *aliunde* his legal rights, if any he had. Prior to that time there could be no vested right and no commitment of either party, not subject to the exercise thereafter of such discretion, affirmative or negative, as might be deemed proper. The case presents the same legal aspect as if it were between individuals. If a merchant should direct his clerk or other agent to investigate and adjust the claim of a third party upon a prescribed basis, and the adjustment was made accordingly, can it be doubted that the merchant might thereafter, because he had come to the conclusion that the claim was

tainted with fraud, or had been already fully paid, or for any other reason, or as a matter of choice, without assigning any reason, decline to recognize what had been done as of any validity, and withdraw the authority under which the proceeding had been taken? The reason of the right would be that there was no binding mutuality of assent, no consideration, and hence no legal obligation resting upon either party."

The same reasons dispose of the second proposition, and show that the report of the Quartermaster General is no more an account stated between the parties than it is an arbitration and award. In order to constitute an account stated between individuals, the statement of the account must be adopted by one party and submitted as correct to the other. But here Congress did not adopt the report of the Quartermaster General as its statement of what was due from the United States; nor was the report submitted to the claimant as a correct statement of indebtedness.

The acceptance by Congress and the appellant, referred to in the third proposition, can only mean the appropriation made by Congress in the act of July 5, 1884, but certainly that cannot be considered an adoption of the report of the Quartermaster General. It does not purport to be an appropriation of a partial payment, as a credit upon a larger sum admitted to be due. Even though it be admitted that the language of the act in its first clause, declaring that the receipt of the money appropriated in each case shall be taken as a full and final discharge of the several claims, does not apply; yet there is no inference that the appropriation actually made was intended to be a recognition of a larger amount in fact due. The presumption is the other way; and the right conclusion is that Congress appropriated all that it meant to acknowledge.

The judgment of the Court of Claims dismissing the petition is therefore

*Affirmed.*