### COLUMBIA RIVER PACKING CO. v. TALLANT.

(Circuit Court, D. Oregon. December 12, 1904.)

#### No. 2,764.

1. ACCOUNT STATED—IMPLIED PROMISE TO PAY—PREVIOUS DENIAL OF LIABILITY.

　　An account stated rests upon a promise to pay, expressed or implied, and where liability had been long and persistently denied on the ground that the indebtedness, whatever it was, had been satisfied by a subsequent transfer of property, the failure of the person charged to object to the correctness of a statement of account sent him, or to make any reply, does not imply a promise to pay, or convert the account into an account stated.

On Petition for Rehearing.
For former opinion, see 132 Fed. 271.

BELLINGER, District Judge. The petition in this case sets forth numerous errors, oversights, and mistakes of fact, and errors of law, as grounds for the rehearing prayed for. The instances are specified where the court is alleged to have overlooked, failed to consider, and disregarded the evidence, where it overlooked plaintiff's objections, did not consider some of the points made in plaintiff's brief, and disregarded others, admitted evidence that was incompetent, was misled in regard to the evidence, was misled in making its decision as to the accounting, and misapplied the case cited in the opinion.

It is stated in the opinion of the court in this case that "there is nothing to show that Tallant [the defendant] made any promise in respect of this report [a report made by an accountant of the

¶ 1. See Account Stated, vol. 1, Cent. Dig. § 18.

result of his examination of the books, accounts, and vouchers of the firm of Tallant & Kendall], or that he had any knowledge respecting it, except that derived from Fulton." As showing that in this statement the court disregarded the evidence, the petition for a rehearing submits that it is admitted by the defendant that the books of account of the business in question were kept by him; that the plaintiff's theory of its case was not that there was an express promise or assent by the defendant, but that he impliedly acquiesced, and for a long time, upwards of 18 months prior to the beginning of the action, made no objections whatever to the status of the account, and that an accounting was had between the defendant and Kendall, and thereafter they agreed that the expert should make a statement of what the books showed, and that that statement was made after the accounting had between defendant and Kendall; and, further, that, as a matter of law, it is not necessary to a recovery by plaintiff that the defendant should have made any promise in respect of the amount due, or with respect to the expert's report. But this testimony, so far from being disregarded by the court, is summarized in the opinion, where it is stated in effect that Kendall testified that the packing company and defendant had an accounting as to the seining business, at which the defendant and witness were present; that they had the books of the company, and went mutually over the different sides of the account between them, and that there was found due from defendant the sum of $4,785.46; that the result of that accounting was, by agreement between Kendall and defendant, placed in the form of a paper writing, etc.; and the conclusion of the court was that in this testimony Kendall was not stating facts, but that he was stating his conclusion that there was a mutual going over the books, etc., from the fact that the accountant's statement was made from the books, vouchers, etc., of the company, at the request of the witness, and furnished to the witness, and thereafter mailed to the defendant, or to an attorney to be presented to the defendant. It is charitable to this witness to assume that he thought that this statement, so prepared, constituted an accounting, and that he implied from it "an agreement," etc.

Two things clearly appear from Kendall's cross-examination: First, that the witness and the defendant did not at any time go mutually over the different sides of the account, and that there was no agreement put in the form of a writing between them; and, second, that the statement of the accountant constitutes the account to which Kendall testifies. The following is an excerpt from the cross-examination of Kendall:

"Q. Do you mean to testify that, at any time or place, you and Mr. Tallant agreed between you, verbally, that there was a certain balance due from Mr. Tallant to your company, the Columbia River Packing Company? A. The books showed it all the time. Q. I don't care what the books showed. Do you mean to say that you gentlemen agreed that there was any amount due? A. The amount that appeared on the books? Q. No, I want the sum certain in which you say the account was stated. Was there ever any agreement between you and Mr. Tallant, or your company and Mr. Tallant, or acknowledgment verbally made, that he owed the plaintiff the sum for which

this action is brought, namely, $4,785.46? A. There never was any dispute after the account was stated."

This witness had previously, in his direct examination, testified as hereinbefore stated. When questioned in his cross-examination as to this statement, he said they went over the books together in San Francisco, and the testimony above quoted shows the nature of that "accounting." It fails to show any agreement, express or implied, by the defendant, and it justifies the inference that the witness did not state facts, but his conclusions from what "the books showed * * * all the time," and from the fact that he never heard from the defendant after the accountant's report "was sent him."

The defendant gives a circumstantial account of what took place between himself and Kendall in San Francisco at the time of the alleged accounting. This was in January or February, 1902. The defendant had several meetings with Kendall, and with Kendall and Cutting, the president and secretary of the plaintiff company, in San Francisco, at the time referred to in Kendall's testimony, and one meeting with the two in the presence of a lawyer, Mr. Chickering. From defendant's testimony it appears that the books in question were not gone over. So far from acquiescing, by his silence or otherwise, in any statement of liability on his part, the defendant testifies that he informed both Cutting and Kendall of his contention that he was not liable on the account claimed; that the three parties went to Mr. Chickering's office, when the defendant stated his side of the case, as he stated it on the trial, to the attorney; that Mr. Chickering advised Kendall and defendant to try to settle the dispute between themselves; that defendant went to Kendall's office the next day, when defendant showed Kendall a few of the seining accounts, with the statement, "You understand, Mr. Kendall, I claim you should pay everything;" that Kendall, having a dinner appointment, said he would have to leave the matter until he came to Astoria, and that defendant thereupon left Kendall and returned to Portland. There is no contradiction of any detail of this circumstantial narrative, and I have no doubt of its truth.

It goes without saying that even the silence of the defendant, if he had been silent, would not imply acquiescence, in view of the long standing and well-defined dispute between the parties as to who was liable for the account.

The petition states that, whatever the dispute was, it had nothing to do with the plaintiff, and was not communicated to the plaintiff. But it is the fact that the plaintiff company was concerned in the dispute and knew all about it. Whether the plaintiff is liable for the demand out of which the action grows is not important; but the defendant's contention was, and is, that his sale of his interest to Kendall, or to Kendall & Sanborn, was for the plaintiff, and so, in the opening statement of Mr. Smith, attorney for the defendant, it is stated that:

"The defendant sold his interest—in the seining grounds—to the company, although the deed was taken in trust in the name of the president of the

company, and that it was the understanding of the parties when the sale was made that a part of the consideration for the conveyance was the cancellation of the debt to the company against Mr. Tallant."

The defendant testifies that his contract, antecedent to the sale, to supply fish to Kendall & Sanborn, was entered into on the representation that, although the business went by the name of Kendall & Sanborn, it was all Columbia River Packing Company; that thereafter, the catch becoming great, Kendall notified defendant that they could not take all the fish, whereupon defendant agreed with Kendall to take $3,000 at the end of the season for his half of the profits (one-half of the seining grounds belonged already to the packing company), Kendall to pay all bills; that Kendall represented that he was acting for the packing company, the plaintiff. The contention of the defendant upon these facts does involve the plaintiff. If Kendall's representations that he was acting for the plaintiff were true, then the liability in question was that of the plaintiff; and, whether true or not, it is at least true that there was a dispute, and that such dispute involved the question of the plaintiff's liability in the premises. It was the subject of discussion, by letter and otherwise, between Kendall and the defendant, long prior to the alleged accounting, as to whether the plaintiff, or Kendall as the plaintiff's president and representative, was liable. There was this dispute when the defendant was in San Francisco, and, according to the defendant's testimony, the subject was talked over between the defendant, Kendall, and Cutting, who was the secretary of the plaintiff company, as already appears. The company knew that this claim of liability was being made, if it is possible for the company to know anything, since defendant's "case" had been stated to an attorney indicated by the secretary of the company, and in the presence of its president and secretary.

It is idle to discuss the matter of Fulton's agency. Kendall sent the accountant's report to Fulton for demand against the defendant, and Fulton assumed that agency. Whom, then, did he represent, if not the party at whose instance and in whose interest he was acting? The demand was the demand of the company, and the attempt to enforce it was made in its behalf. The testimony of Kendall to the effect that he mailed the defendant a copy of the account, the argument that Fulton was not the agent of the plaintiff, and that no knowledge of the defendant's repudiation of liability made to Fulton in answer to the latter's demand made in plaintiff's behalf was ever communicated to plaintiff, might all be excused if they had any bearing upon the question of an account stated. Whether the plaintiff knew that defendant disputed its claim or not, is not material. There must be more than the mere fact that plaintiff did not know that the defendant denied liability. The plaintiff must know and prove that the defendant, impliedly or otherwise, assumed liability. The circumstances which show knowledge on the company's part, also show the persistence of the dispute, and the uncompromising attitude of the defendant respecting it. And yet it is in the face of these facts that the defendant is said to have "acquiesced" or impliedly or otherwise "agreed" in

advance that an accountant should make a report which should show the amount of an undisputed liability on his part; that the defendant has not disputed the "correctness" of the account; in other words, that he has admitted that such expenses were incurred while he was conducting the seining business, and, although such admission states that the plaintiff had agreed to pay, nevertheless the statement is an admission of liability on defendant's part. In other words, the defendant, by the very act of denying liability for these expenses, is said to have admitted liability because he admits that such expenses were incurred.

. An action upon an account stated is an action upon the promise, expressed or implied, in the account. The action is not upon the original liability, but upon the new promise. A denial of liability negatives any implication of a promise. The truth of this is self-evident. The ground of the denial is of no consequence. It is the fact of denial that is decisive. Such facts as are referred to in this petition—that the defendant kept the books of account, that he has not denied that such books are "correct," and any fact or facts having the effect of admitting the original liability, or of estopping the defendant to deny it—are not sufficient to sustain a complaint upon an account stated, nor do they tend to prove such account. All admissions and estoppels must refer to the new promise. And, as already stated, there can, in the nature of the thing. be no implication of the new promise against an express denial of liability, on whatever ground, or on no ground. The case of Ryan v. Gross, 48 Ala. 370, is directly in point. In that case there was an account for goods furnished the defendant, who was a widow, pending the administration of her husband's estate. The complaint contained two counts, one upon an account stated, and one upon an open account for the same indebtedness. In support of the account stated, the plaintiff proved that some four years subsequent to the last item in the original account he sent the account to the defendant, who had remarried in the meantime, with a request that she and her husband execute a note therefor. To this the defendant and her husband answered, "not denying or disputing the correctness of the items of the account," but insisting that the defendant was not liable, but that the account should be paid by the administrator of the deceased husband's estate; and so the identical case was presented that we have here. The trial court instructed the jury to the effect that the admission by the defendant of the correctness of the items of the account would be an admission making the account a stated account, on which suit could be brought in the statutory period. The contention for the plaintiff ·is the same in this case. On appeal this charge was held erroneous, upon the ground that defendant's refusal to pay, and insistence that another person was justly chargeable with and ought to pay; de- ·feated the account stated. The court said that the evidence of the ·defendant, perhaps, might be sufficient to enable the plaintiff to recover on the common count for goods sold, if the statute of limita- .tions were out of the way, and that the plaintiff sought to avoid ;the defense of the statute by showing that the account was changed

from an open to an account stated—the limitation in the former case being three years, while in the latter it was six.

It is stated in the petition for a rehearing that the Alabama case is not in point, because of the plea of the statute of limitations interposed in that case; but that plea only referred to the second count in the complaint, which was upon the open account or original liability. It had nothing to do with the cause of action upon the account stated, as to which the case was in no wise affected by the fact that there was such a thing as a statute of limitations.

The petition for a rehearing is denied.