LEISENRING et al. v. UNITED STATES.
No. L—221.

Court of Claims.

Nov. 6, 1933.

For former opinion, see 3 F. Supp. 853.

Argued before BOOTH, Chief Justice, and WHALEY, WILLIAMS, and LITTLETON, Judges.

Spencer Gordon and Marion P. Wormhoudt, both of Washington, D. C. (Covington, Burling & Rublee, of Washington, D. C., on the brief), for plaintiff.

John A. Rees and Charles B. Rugg, Asst. Atty. Gen., for the United States.

GREEN, Judge.

 In the argument for new trial it is contended that this case is identical with the case of Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018, in which judgment was rendered for the plaintiff. We have undertaken to show both in the case of David Daube v. United States, 59 F.(2d) 842, 1 F. Supp. 771, 75 Ct. Cl. 633, affirmed 289 U. S. 367, 53 S. Ct. 597, 599, 77 L. Ed. 1261, and in the opinion originally filed in the case at bar that the decision in the Bonwit Teller Case was based upon the assumption not disputed in the briefs of counsel that there was in fact an account stated in favor of the plaintiff. But aside from this, there is an important difference between the case now before the court and the Bonwit Teller Case, supra. This difference is found in finding 6 which recites:

"6. There is nothing in the evidence that shows or tends to show that there was at any time any agreement or promise, express or implied, on the part of the defendant through its officials to refund or pay to the taxpayer the sum for which suit is brought, or any other sum beyond the amount to be refunded as specified in the certificate of overassessment for the year 1919, which showed a credit of a portion of the overassessment against the taxes of 1917 as set forth above."

This statement is criticized as being a negative finding, but negative findings are often made by this court as a matter of necessity and are absolutely required where there is

any question as to whether or not there is evidence on certain points which are vital to the case. There is not and cannot be any objection to this finding on the ground that it does not correctly show the condition of the evidence.

There was no such finding made in the Bonwit Teller Case, supra.

This finding is determinative of the case, but in order that all that appeared from the evidence may be shown by the findings we have concluded to add thereto the words, "nor was there anything in the evidence that tended to show an admission on the part of the taxpayer of the correctness of the balance struck by the account."

■ In the original opinion herein, we referred to the case of David Daube v. United States, supra, and the opinion of the Supreme Court affirming the decision therein. In the Daube Case, supra, the majority opinion referred to the rule that in order to constitute an account stated the parties must agree upon the balance struck and there must be a promise, express or implied, for the payment of the balance, and further that "the parties cannot state an account by agreeing to part of the items, and leaving the others open for future adjustment or litigation." This principle has been supported by a uniform line of authorities for more than a hundred years and no court has ever deviated therefrom when the question came before it for determination. In 1 C. J., § 263, p. 685, more than fifty cases are cited in note 34 as following the rule. Also in 1 C. J., § 265, p. 686, it is said that:

"In order to create an account stated, the debtor must not only assent to the correctness of the account but also admit his liability therefor." Citing numerous cases among which is Columbia River Packing Co. v. Tallant (C. C.) 133 F. 990, wherein it is said that an action upon an account stated is an action upon the promise to pay.

Hundreds of cases could be cited where the question was whether the minds of the parties met upon the correctness of the account stated. It is also to be noted that, to put it as stated in the original opinion in the case at bar, in the case of David Daube, supra, the Supreme Court said that the evidence must be such that it "sustains the inference of an agreement that the tax shall be repaid." Finding 6 negatives such a conclusion.

Nevertheless, it seems to be contended now that in the case of Toland v. Sprague, 12 Pet. 300, 335, 9 L. Ed. 1093, cited by the Supreme Court in the Daube Case, it was held that the nature of an account stated is not changed by there being a controversy as to the balance due thereon. We are clearly of the opinion that such was not the holding with reference to the account itself and that so far from sustaining the contention made on behalf of defendant the case by implication sustains the rule we have above stated. The action in the case last cited was upon an account for merchandise as to which the court said in the opinion, "neither party asks to open the account, and both admit the same balance." The defendant in the case refused to pay this balance by reason of a claim set up by him on matters having no connection with the account. The account and the balance having been agreed to, the court properly held that this constituted an account stated.

We think it is obvious that if the rule contended for was adopted the consequences would overturn a number of other well-settled principles of commercial law. Under such a rule a creditor could not send out an account containing items of debit and credit without fixing his liability for the items of credit contained in the account and giving the debtor an extension of the period of limitations to sue thereon. So also if no assent is necessary, the mere sending out of a statement of an account on the part of the creditor would bind the debtor and extend the time of limitations for bringing suit thereon.

We see no reason for further argument, and the motion for leave to argue the motion for new trial orally is therefore overruled. The motion for new trial is also overruled.

· LITTLETON, Judge (dissenting).

If, as the Supreme Court held in the Bonwit Teller Case, the provisions requiring the filing of claims for refund for taxes alleged to have been erroneously or illegally collected do not apply to overpayments of taxes allowed after the allowance is made and a certificate of overassessment is issued and delivered, and the statute of limitation requiring that suits to recover taxes alleged to have been erroneously or illegally collected must be instituted within two years has no application to a suit to recover an overpayment allowed, what limitation except the statute of six years after the cause of action accrued can apply?

The Commissioner's allowance of an overpayment for a particular year is an award in favor of the taxpayer; and this is true notwithstanding an attempted credit is made. There is no appeal from his decision and it is

not subject to review by any other administrative officer. A suit to recover the whole or a part of an overpayment allowed by the commissioner is not, as pointed out by the court in the Bonwit Teller Case, a suit to recover a tax alleged to have been erroneously or illegally collected but is a suit to recover the amount of an allowed claim. If the whole or a portion of an overpayment allowed for which a certificate of overassessment is issued is offset against an alleged indebtedness of a taxpayer to the government or payment is withheld for any reason, is the taxpayer, after such allowance and issuance of a certificate of overassessment, required to file another claim for refund under section 3228 of the Revised Statutes (as amended, 26 USCA § 157)? The provisions requiring the filing of a claim for refund do not seem to me to apply to cases where the overpayment has already been allowed. Moreover, the Commissioner could postpone action upon a claim duly filed under section 3228, Revised Statutes, for a tax alleged to have been erroneously or illegally collected until the expiration of four years after such tax was paid and then allow it, refuse to make the refund, and, if the provisions of such section are applicable and require such claims, no valid claim could be filed within four years after payment, and, in such a case, no suit could be brought within five years after payment. Where a claim for refund is filed in accordance with the statute prior to any allowance by the Commissioner, the Commissioner usually makes his decision thereon more than four years after the tax was paid and in many cases more than five years thereafter.

A taxpayer might in some case perchance file a second claim for refund for the overpayment allowed by the Commissioner after such allowance and issuance of a certificate of overassessment and institute suit within six months after the filing of such second claim or within two years after the refusal of the Commissioner to pay such overpayment allowed, but I do not construe the provisions of section 3228 of the Revised Statutes, as amended, or the provisions of section 3226 of the Revised Statutes as amended (26 USCA § 156) to require that this be done.

I am still of the opinion, therefore, that where the Commissioner allows an overpayment and issues and delivers a certificate of overassessment, there is a statement of the account for that year, and that a suit instituted within six years to recover the whole or any portion of such allowance, if payment thereof is refused for any reason, is timely.

The offset or credit of a portion of the overpayment in favor of plaintiff for 1919 as disclosed by the certificate of overassessment did not prevent the account for 1919 from being a stated account. Toland v. Sprague, 12 Pet. 300, 335, 9 L. Ed. 1093. In this case the credit or offset was void and of no effect by express provision of the statute, otherwise the plaintiff would have had four or five years within which to file a claim for refund and two years after disallowance to bring suit for the erroneous credit as an erroneous and illegal collection for 1917. Compare United States v. Swift & Co., 282 U. S. 468, 51 S. Ct. 202, 75 L. Ed. 464. But in a case like the present one, no suit could be maintained to recover the amount credited as a collection for it was void, Parks & Woolson Machine Co. v. United States, 58 F.(2d) 868, 75 Ct. Cl. 204, and the statute commanded the Commissioner to pay the claimed overpayment to the taxpayer. The Commissioner's allowance, I think, gave rise to an implied promise to pay and gave plaintiff a cause of action upon the certificate of allowance which was accepted by the taxpayer, which stated a balance of $77,338.94 in favor of the taxpayer in the tax account for 1919, only $42,524.90 of which was paid. The fact that the government claimed the right to retain $34,814.04 of the overpayment disclosed in the certificate delivered to the plaintiff, and to apply it against an alleged indebtedness of the taxpayer on another account for a different taxable year, does not, it seems to me, change the situation. The government and the taxpayer admitted the correctness of the overpayment due plaintiff for 1919, as stated in the Commissioner's certificate, but the Commissioner said in effect: I will give you a check for only a portion of the amount which I have allowed, and which the government owes you for 1919, and will pay you the balance by crediting it to your account for 1917, but there was nothing due the government for 1917 which could be collected and the attempted credit has since been declared void by the statute.

In Daube v. United States, 289 U. S. 367, 369, 370, 53 S. Ct. 597, 598, 77 L. Ed. 1261, in which the Commissioner did not issue a certificate of overassessment or otherwise notify the taxpayer of the overpayment for 1919, the court distinguished the Bonwit Teller Case and said: "The collector did what the Commissioner commanded. No notice, however, of his action was transmitted to the taxpayer. There was no delivery to the taxpayer of a certificate of overassessment. There was no delivery of a copy of any sched-

ule of refunds and credits. * * * The Commissioner did not inform the taxpayer that the tax [for 1919] had been overpaid in a determinate amount. The taxpayer did not give assent either expressly or by silence to the outcome of the audit. The essentials of an account stated in any strict or proper sense are lacking altogether. Toland v. Sprague, 12 Pet. 300, 333, 9 L. Ed. 1093; Nutt v. United States, 125 U. S. 650, 655, 8 S. Ct. 997, 31 L. Ed. 821; Volkening v. De Graaf, supra [81 N. Y. 268, 271]; Newburger-Morris Co. v. Talcott, 219 N. Y. 505, 511, 512, 114 N. E. 846, 3 A. L. R. 287. A different situation was disclosed in the Bonwit Teller Case, supra. There the certificate of overassessment had been delivered to the taxpayer. * * * "

In Toland v. Sprague, supra, cited with approval by the court, it was pointed out that the nature of an account stated is not changed by there being a controversy as to a balance stated. In that case it appeared that the defendant who had sold certain merchandise for plaintiff's account sent plaintiff a statement of the sales amounting, in net proceeds, to $2,579.13, and showing that amount to be due plaintiff on account of such sales. This amount, however, was not paid to plaintiff but was withheld by the defendant on the ground that he was entitled to retain the amount to satisfy amounts due him by plaintiff for advances made to plaintiff's agent in their dealings for plaintiff's account. The question before the Circuit Court and the Supreme Court was whether, under the circumstances, there was an account stated between Toland and Sprague. The court held that there was, and said: "We agree in opinion with the circuit court, that there was a matter of controversy brought to a single point between them; that is, which of them had, by law, a right to a sum of money, ascertained, by consent, to amount to $1579." The court further pointed out that *"the nature of the account is not changed by there being a controversy as to a balance stated, which the defendant does not ask to diminish, or the plaintiff to increase. * * *"* As the circuit court say, the question between them is not about the account, or any item in it; but as to the right of the defendant to retain the admitted balance, to repay the advances made to Pettit." (Italics supplied.) So in this case, the only controversy was and is whether the defendant had the right to retain a portion of the overpayment allowed for 1919, of which plaintiff was advised, and to apply it on the 1917 tax account. In the Toland Case the statute of limitation started to run when the account was stated and the suit was held to be barred, whereas if there had been no account stated this suit would have been in time, as contended by the plaintiff.

In Wm. J. Friday & Co., Inc. v. United States, 61 F.(2d) 370, 374, the Circuit Court of Appeals for the Third Circuit applied the rule laid down in the Bonwit Teller Case and held that the taxpayer was entitled to maintain a suit instituted within six years to recover a portion of an overpayment allowed for one year and credited against a barred tax for another year. The Wm. J. Friday & Company Case was cited by the Supreme Court in connection with its statement in the Daube Case, as follows: "A different situation was disclosed in the Bonwit Teller Case, supra. There the certificate of overassessment had been delivered to the taxpayer. 'Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought.' Bonwit Teller & Co. v. United States, supra, page 265 of 283 U. S., 51 S. Ct. 395, 398 [75 L. Ed. 1018]. Cf. Wm. J. Friday & Co., Inc. v. United States (C. C. A.) 61 F.(2d) 370."

There was an agreement in the case at bar that the overpayment for 1919 would be repaid, either in cash or by a lawful credit. It was not repaid in cash and the credit was unlawful. The contest as to the validity of the credit does not affect the statement of the account for 1919.