## WM. J. FRIDAY & CO., Inc., v. UNITED STATES.

### No. 4618.

Circuit Court of Appeals, Third Circuit.
Sept. 19, 1932.

Ewing Laporte, of Pittsburgh, Pa., for appellant.

Louis E. Graham, U. S. Atty., and John A. McCann, Sp. Asst. to U. S. Atty., both of Pittsburgh, Pa. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Albert T. Clark, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

The appellant taxpayer had overpaid its income and profits taxes for the year 1919. Having failed to avail itself, within the statutory period, of the remedy by which it could recover the overpayment in proceedings for a refund of a tax illegally assessed or collected (section 3226, R. S. [26 USCA § 156]), it brought this suit on a certificate of overpayment by the Commissioner of Internal Revenue on the theory that it could recover on the government's implied promise to pay what the Commissioner had certified was due it. The main question in the case is not whether such an action will lie upon a proper state of facts but is whether the learned trial court erred in holding, on demurrer, that a claim for refund (as in a tax suit) is a condition precedent to bringing a suit of this kind and whether, in default of such prior claim, it erred in entering judgment for the government. But the government says even if the plaintiff is right in its theory of the case, its "petition does not state a cause of action for the reason that it does not affirmatively appear therein that suit was brought within six years of the accrual of the cause of action" under the statute. Judicial Code,

§ 24 (20), title 28, U. S. C., § 41 (20), 28 USCA § 41 (20).

Feeling that the matter might be jurisdictional and therefore, as under other statutes, to be shown, affirmatively, Arnson v. Murphy, 115 U. S. 579, 6 S. Ct. 185, 29 L. Ed. 491, the plaintiff took two positions: One by a motion that the case be remanded with leave to apply to the District Court for leave to amend by adding allegations that would bring it within the statute; the other that, anyhow, the suit was brought within six years of the accruing of the cause of action.

Under the provisions of section 701, R. S. (28 USCA § 876), made applicable to the Circuit Courts of Appeals (26 Stat. 829, § 10 [28 USCA § 877]), appellate courts have given leave to amend for a jurisdictional purpose when a judgment has been reversed and the case sent back for re-trial, Robertson v. Cease, 97 U. S. 646, 24 L. Ed. 1057; but we have been shown no federal authority or practice which authorizes an appellate court, before rendering its decision on appeal, to remand a case for amendment as to facts which will bring it within a statute of limitations. After remand, the case, no longer in the appellate court, would be back in the trial court. There, in order to amend the pleadings, the judgment would have to be vacated and the case opened and, when opened and amendment allowed, it would require a re-trial on the new facts, all after the term of the judgment. This would approach perilously near the forbidden situation in Montgomery v. Realty Acceptance Corporation (C. C. A.) 51 F.(2d) 642; Id., 284 U. S. 547, 52 S. Ct. 215, 76 L. Ed. 476.

Moreover, in the case at bar, the plaintiff had, under the rules, an opportunity to amend after the court had sustained the government's demurrer, but it elected to "stand upon its original petition heretofore filed herein and not to amend or file any further pleading by way of a petition." In other words, on its election the judgment on demurrer was not respondeat ouster but was final, and as conclusively final as though on verdict. We shall not hazard a remand of the case for the purpose of amendment.

Accordingly, the case will be decided on the record as made. It presents two questions: One, the jurisdictional question of bringing the suit within six years of the accrual of the cause of action; the other, if suit was seasonably brought, whether on demurrer the judgment for the government is right.

On both of these questions the record must be read in the light of the decision in Bonwit Teller & Co. v. United States, 283 U. S. 258, 265, 51 S. Ct. 395, 75 L. Ed. 1018, rendered after the judgment in this case, on which alone the plaintiff can prevail. We construe that decision as the plaintiff construes it and, indeed, as the defendant itself now construes it, in that it declares that a taxpayer who has overpaid his tax has a right to sue on the government's promise to pay which is implied in a certificate of overpayment made and delivered by the Commissioner of Internal Revenue. To find out whether the plaintiff pleaded its case within the law of the Bonwit Teller decision, not, for the moment, as to its right to recover but as to whether the action is within the statute of limitations, it is necessary to see how Bonwit Teller & Company pleaded its case. The court said (page 265 of 283 U. S., 51 S. Ct. 395, 398) in that respect:

"Plaintiff pleaded its claim in two forms. The first is based upon the issue and delivery of the Commissioner's certificate showing plaintiff entitled to a refund in the amount specified. The second alleges an account stated showing that there is due plaintiff the amount claimed. The action is not for the overpayment of the tax in 1919, but is grounded upon the determination evidenced by the certificate issued by the Commissioner May 12, 1927. Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought."

Turning to the plaintiff's petition, the first five paragraphs are formal, showing the parties, the assessment of the tax for 1919 and the audit by the Commissioner determining that the tax was overpaid in the sum of $22,952.16. By the sixth paragraph the plaintiff averred that:

"On February 26, 1924, the Commissioner of Internal Revenue signed Schedule of Overpayments * * * and directed the Collector of Internal Revenue at Pittsburgh, Pennsylvania, to examine the accounts of petitioner and to apply any part of said sum of $22,952.16 as a credit against additional taxes for other years which might be due and unpaid. Said Collector subsequently, to-wit, on April 28, 1924, examined the accounts of petitioner and applied $10,351.71 of said sum of $22,952.16 as a credit against the additional income and profits taxes for 1917 * * *, (admittedly barred by the statute of limitations). Thereafter said Commissioner approved such action of said Collector of In-

ternal Revenue." (What happened to the remainder of the overpayment of $22,952.16 does not appear and is not here involved.)

By paragraph 7 it is averred that no part of this $10,351.71 has been paid the plaintiff. Accordingly it brought suit (under the Tucker Act, 24 Stat. 505 [see 28 USCA § 41 (20)]) for $10,000 of that sum. But it brought suit on April 24, 1930, or six years and two months after the Commissioner had signed the schedule of overpayment.

From this statement of the pleading it is clear the plaintiff brought its suit not on an account stated, one of the causes of action in the Bonwit Teller Case, but on the government's promise to pay implied in the Commissioner's certificate of overpayment, the other cause of action in that suit.

■ Now the question presents itself: When did the implied promise arise? In other words, when did the cause of action accrue, namely, when the Commissioner "signed" the schedule of overpayments (February 26, 1924); when the Collector "applied" a part (in fact nearly all) of the overpayment (in question) to the 1917 tax (April 28, 1924); or on some unknown later date when the Commissioner "approved" the action of the Collector, leaving a small balance due which the plaintiff waived in order to bring its suit within the limitation of the Tucker Act; or when, still later, the Commissioner "delivered" the certificate of overpayment to the plaintiff?

Naturally, the plaintiff urges that the date of signing the schedule, which was more than six years before suit, is not the date on which the implied promise arose, but that it is the date of the Collector's application of its overpayment to the credit of a tax past due, or the date on which the Commissioner approved the Collector's action, or on which the Commissioner delivered the certificate to it. If the first be the true date, the action is barred; if either of the last three dates, being within six years of bringing the suit, the action is saved.

The plaintiff cites for its authority two cases, Girard Trust Company v. United States, 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524, which is persuasive, and United States v. Swift & Co., 282 U. S. 468, 51 S. Ct. 202, 75 L. Ed. 464, which is in point. In the latter case the learned justice writing the opinion gave, in illuminating detail, the administrative procedure in such matters.

(1) It begins with the Commissioner signing (it may be of his own motion) a schedule of overpayments which is not limited to an overpayment by a particular taxpayer but, as the name denotes, is a "schedule" of overpayments by several or many taxpayers; (2) the schedule is transmitted to the Collector of the district in which the taxes have, as tentatively found, been overpaid; (3) the Collector compares the items of the schedule with his accounts and where overpayments have occurred applies them in whole or in part as credits on other taxes of the taxpayers which are due and unpaid; (4) the Collector then returns the schedule to the Commissioner with his report as to refunds and credits; (5) these are checked by the Deputy Commissioner and reported to the Commissioner; (6) the Commissioner—with the whole matter open all the time—may approve the Collector's action as to a particular taxpayer; if so, (7) he notifies the Collector thereof; and (8) delivers a certificate of overpayment to that taxpayer, showing him, perhaps for the first time, what has happened.

Referring to United States v. Swift & Co., supra, for a more extended view of this procedure and the reasoning that applies to each of its steps, it will be enough to say that that case rules the instant case in deciding that the schedule of overpayments is not the instrument on which the government's implied promise to pay arises; nor is the Collector's application of an overpayment as a credit on a prior tax of the taxpayer; but that, after all these preliminary steps, the Commissioner's approval of the Collector's report of credits and refunds is the final exercise of his discretion, and on his certificate to that effect when delivered to the taxpayer arises an implied promise on the part of the government to pay and, accordingly, there accrues a cause of action on which a suit may be brought.

■ We shall now apply this law to the critical dates in this suit, which are, as before stated, the date the Commissioner signed the schedule of overpayments (February 26, 1924), the date he sent the schedule to the Collector (unknown), the date on which the Collector examined the accounts and applied a part of the overpayment as a credit on a previous tax (April 28, 1924), the date the Commissioner approved the account of the Collector, not named but averred as "thereafter," that is, after April 28, 1924, and the date of his delivery of the certificate to the plaintiff (not stated).

The fact of "delivery" of the Commission-

er's certificate of overpayment to the plaintiff and the date of delivery were not averred in the petition. This omission was, probably, a proper ground for demurrer. But the government, notwithstanding the plain declaration of the cause of action on the government's implied promise, demurred for want of sufficient statement of facts as though the action were on a claimed refund of taxes illegally assessed and collected and was accordingly silent on the element of delivery of the certificate and on every other element entering into a suit on an implied promise. As there was no demurrer below on the lack of averment as to delivery of the certificate, the government cannot now assail the petition on appeal as though here on demurrer. We are therefore constrained to hold that the government, for the time, waived an averment of delivery of the Commissioner's certificate, and that, as delivery of the certificate, if any, must have followed the date of the Commissioner's approval, which, by averment, followed the date of the Collector's application of a part of the overpayment to the unpaid 1917 tax (April 28, 1924), the date of delivery on which the cause of action accrued was some time later.

It follows that on these averments the plaintiff, though not having before it the after-decided Bonwit Teller and Swift & Company cases to point the way, nevertheless saved itself by bringing its suit on April 24, 1930, which was within six years of the accrual of the cause of action under the statute.

The remaining questions here on appeal are whether the court erred, first, in entering judgment for the government, and next, in not entering judgment for the plaintiff taxpayer.

The answers to these questions turn squarely on the pleadings. Plainly, the suit is not for a refund of a tax under section 3226, R. S. It is equally plain that the cause of action pleaded is the government's promise to pay, implied on the delivery of the Commissioner's certificate of overpayment to the plaintiff taxpayer. Such a suit, while not without precedent in other fields of the government's activities, was unusual. The government, evidently thinking that the plaintiff's only remedy, or proper remedy, was by suit for refund of a tax illegally assessed or collected (section 3226, R. S.), filed an affidavit of defense in the nature of a demurrer specifying the plaintiff's failure to aver two essentials of an action of that kind, one, a prior filing of a claim for refund and, the other, the appropriate executive action such

as rejection of the claim. The learned trial court also was inclined to the view that the suit was for refund of a tax, and holding that a claim for a refund was a condition precedent to bringing the suit and finding that none had been averred, entered judgment on the demurrer for the government. In doing so we are constrained to hold that it fell into error, since in an action of this kind which is not for a tax refund, a claim for a refund is, of course, not a condition precedent.

The final question raised by the assignments is whether the court erred in not entering judgment for the plaintiff on the demurrer.

As a matter of practice we are at a loss to see how the plaintiff would have been entitled to a judgment on the facts if the court had overruled the government's demurrer as we now hold it should have done. At common law, or at any other law with which we are familiar, the action of a court in overruling or sustaining a general demurrer to a petition or narr. is a finding, on averred facts admitted, that the plaintiff has or has not a good cause of action. If the demurrer be sustained, the judgment for the defendant is, in most jurisdictions, either final or respondeat ouster at the election of the plaintiff. If respondeat ouster, the plaintiff may, as under the Pennsylvania rule, amend and go to trial. If final, it is conclusive upon both parties, but an appeal lies, as in this case. If on the plaintiff's appeal the judgment on demurrer be reversed, it leaves the case as before demurrer or as though the demurrer had been overruled, and leaves it open to trial (after traverse) on the unaffected pleading, the averments of which, of course, must be proved before verdict. True, all facts well pleaded are admitted by the demurrer but this admission is only for purposes of demurrer. It is not conclusive of the case; therefore it does not authorize the trial court, on overruling the defendant's demurrer, to enter judgment for the plaintiff; nor does it authorize this court in reversing a final judgment sustaining the defendant's demurrer to enter (or direct) judgment for the plaintiff in the nature of a judgment non obstante. Furthermore, in this case the fact of delivery of the Commissioner's certificate of overpayment was not admitted for it was not pleaded. Though an essential averment in this form of action, its absence was waived on a demurrer addressed to an altogether different kind of action, and specifically directed to entirely different defects in pleading. It follows that the trial court, had it over-

ruled the demurrer, would not have committed error in refusing to enter judgment for the plaintiff, and it follows with equal certainty that this court has no power on reversal of a judgment for the defendant to direct a judgment for the plaintiff. Slocum v. New York Life Insurance Company, 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

The judgment on demurrer must be reversed, leaving the plaintiff to its trial, at which, to prevail, it must aver and prove, as a substantive material fact, delivery of the Commissioner's certificate of overpayment within the law of the Bonwit Teller decision, and (on a question not here raised or decided) it must satisfy the court, as matter of law, that on proof of delivery of the certificate, showing application of the fund to a prior tax which, it is claimed, was a misapplication because barred by a statute of limitations, and showing practically nothing due the plaintiff, there is still implied in such a certificate a promise on the part of the government to return the overpayment in full.