## ATKINSON v. UNITED STATES.
### No. 3009.

District Court, D. Minnesota, Fourth Division.
March 3, 1933.

John J. Stoller (of Works & Stoller), of Minneapolis, Minn., for plaintiff.

M. W. Goldsworthy, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for the United States.

NORDBYE, District Judge.

It appears that Harold E. Atkinson filed income tax returns for the calendar years 1924 and 1925 with the collector of internal revenue, paying tax thereon of $300.90 for the year 1924, and $13,591.62 for the year 1925. An audit was subsequently made of the 1924 and 1925 taxes, and on October 23, 1926, the plaintiff received from the internal revenue agent at St. Paul, a statement of certain adjustments which that office proposed to recommend. The question as to adjustments arose on account of the assessment by the government of a certain alleged profit received by the taxpayer arising from exchange by the plaintiff of his stockholdings in E. E. Atkinson & Co., a corporation, for a certain number of shares of common and preferred stock of the National Department Stores. A personal account of the taxpayer due the Atkinson Company in the sum of $29,178.80 was canceled under the transaction involving the exchange of stock. The revenue department determined that the exchange of stock was a sale, and that the cancellation of the personal account was equivalent to an additional selling price received by the taxpayer. The transaction was first considered as income for the year 1925, and it was on this income that the taxpayer paid his tax for the year 1925. The revenue department, however, after an audit, concluded that the sale of stock and the cancellation of the indebtedness took place in the year 1924, and not in 1925, and that therefore there was an overassessment for the year 1925, and that a tax on the stock transaction should be assessed for the year 1924. The report of the internal revenue agent in St. Paul indicated a deficiency in the tax of $10,352.88 for the year

1924, and an overassessment of $12,123.10 for the year 1925. On March 26, 1927, the Commissioner mailed to plaintiff a registered letter in accordance with section 274 (a) of the Revenue Act of 1926 (26 USCA § 1048), advising plaintiff of the overassessment of $12,123.10 for the year 1925, and the deficiency of $10,319.08 for the year 1924. Apparently in response to this notice, protest was filed by plaintiff's representative, and on May 4, 1927, a brief in protest of the additional tax proposed for the year 1924 was filed by plaintiff's representative, one Mr. Kilbourne. Conferences were held in the office of the Commissioner on at least two occasions during May and June, 1927, and as the result of the consideration of the evidence presented, the deficiency in the tax for 1924 of $10,319.08, proposed in the registered letter of March 26, 1927, was reduced to $3,647.35. On August 30, 1927, plaintiff's representative, Mr. Kilbourne, signed the following consenting agreement which was filed with the Treasury Department, the applicable portions of such agreement being as follows:

"Consenting Agreement

"In re:    E. E. Atkinson,
          "Minnie F. Atkinson,
          "H. E. Atkinson,
          "Alfred M. Atkinson,

"It is hereby agreed that the tax liabilities of the above named taxpayers for the years 1924 and 1925 be adjusted as follows:

| Name | Year | Income per 60 day letter | Income as Revised | Deficiency as Revised |
|---|---|---|---|---|
| H. E. Atkinson | 1924 | $97,858.37 | $44,848.51 | $3,647.35" |

On September 8, 1927, the following letter was sent to plaintiff by the Commissioner:

"Treasury Department

"Office of Commissioner of Internal Revenue
          "Washington

                "September 8, 1927.
"SAC:PFC
  "ERW
"Mr. H. E. Atkinson, 701 Nicollet Avenue, Minneapolis, Minnesota.
"Sir: Reference is made to conferences held in this office on May 10 and June 27, 1927, with your representatives, Messrs. Walter H. Kilbourne and Harold R. Love relative to a deficiency in tax of $10,319.08 for the year 1924 outlined in sixty-day letter dated April 28, 1927.
"As the result of the consideration of evidence presented at the conferences your tax liability for 1924 has been recomputed as shown in the attached statement.

"The revised deficiency of $3,647.35 will be assessed on the next assessment list for your district on the basis of the consent agreement signed by your representative, Mr. W. H. Kilbourne. Payment of the tax should be made upon receipt of demand notice from the Collector of Internal Revenue.

"A copy of this letter is being mailed to Mr. Kilbourne.
          "Respectfully,          C. R. Nash,
          "Assistant to the Commissioner.
"Enclosure:
"Statement."

Annexed to this letter was a statement setting forth in detail the manner in which the plaintiff's tax was computed for the year 1924, resulting in the deficiency of $3,647.35. Interest was computed on said deficiency of $3,647.35 in the sum of $473.43, and on November 3, 1927, the overassessment for the year 1925 in the amount of $4,120.78 ($3,647.35 deficiency plus $473.43 interest) was credited to the deficiency assessed for the year 1924. On November 16, 1927, certificate of overassessment No. 1065803 was issued and mailed to the plaintiff, indicating that the 1925 tax had been overassessed in the sum of $12,123.10, and the taxpayer was notified that of such overassessment $4,120.78 had been credited to the deficiency in the 1924 tax. There was refunded to the taxpayer by check at the same time that the certificate of overassessment was mailed to him, the sum of $8,002.32, and interest in the sum of $860.14. The following are the pertinent portions of the certificate of overassessment:

          "Treasury Department

"Office of Commissioner of Internal Revenue
          "Certificate of Overassessment

               "Number: 1065803
               "Allowed: $12,123.10
               "Schedule No. 27525

"Mr. Harold E. Atkinson, % Mr. Harold R. Love, Aero Club Bldg., Minneapolis, Minnesota.

"Sir: An audit of your income tax return, Form 1040, and a consideration of all the claims (if any) filed by you for the year 1925 indicates that the tax assessed for this year was in excess of the amount due:

| | |
|---|---|
| Tax assessed, (Account Number Jn. 300206—1926) | $13,591.62 |
| Tax assessable | 1,468.52 |
| Overassessment | $12,123.10 |

"The amount of the overassessment will be abated, credited, or refunded as indicated below. (You will be relieved from the payment of any amount abated; if an overpayment has been made and other taxes are due, credit will be made accordingly, and any amount refundable is covered by a Treasury check transmitted herewith.)

"Included in the accompanying check is interest in the amount stated below, allowed on the refund or credit.
Abated: $
Credited: $ 4,120.78
    To Tax. Year Addtl. 1924
Refunded: $ 8,002.32
Interest: $ 860.14
    "Respectfully,        C. R. Nash,
        "Assistant to the Commissioner."

Plaintiff accepted the refund check, cashed it, and retained the proceeds. Apparently, some time thereafter plaintiff filed a claim for refund of $4,120.78, which had been assessed as a deficiency for the year 1924. The claim for refund, however, was not produced at the trial, and the only evidence there is concerning such a claim is to be found in the letter dated March 26, 1931, from the Commissioner to the plaintiff wherein the Commissioner acknowledged the receipt of the claim for such refund and stated that it had been examined, and that the claim was based on the following statements: "The Commissioner purported to assess an alleged deficiency of $3,647.35 plus interest of $473.43 for the year 1924; that the action of the Commissioner in attempting to assess said sums was illegal in that the alleged deficiency assessment and collection through crediting the overpayment due for the year 1925 to the extent of $4,120.78 of the $12,123.10 overpayment due was not made through the issuance of any notice of such alleged deficiency to the taxpayer as required by section 274 (a) of the Revenue Act of 1926 which was in force when this alleged deficiency was determined and assessed; that no letter or notice under section 274 of the Revenue Act of 1926 showing a deficiency of $3,647.35 was ever mailed to the taxpayer."

In this letter of March 26, 1931, the Commissioner set up the various steps that had been taken with reference to the adjustment of the taxes assessed against plaintiff for the years 1924 and 1925, and after a review of the facts, stated that the claim for refund would be rejected. The last two paragraphs of said letter read as follows:

"If you do not acquiesce in the proposed action relative to your claims and desire a hearing in the Unit at Washington, such hearing will be granted if written request is made therefor within thirty days from the date of this letter.

"If a hearing is not requested, the rejection of the claim will be officially scheduled at the expiration of the period indicated."

It does not appear that the plaintiff took any further steps to obtain a rehearing, and this suit was instituted on or about June 6, 1932, to recover the sum of $4,120.78, the amount of the overassessment that was applied to the 1924 deficiency. The record is neither illuminating nor very satisfactory, but the above facts may fairly be gleaned from the correspondence that was received in evidence. The government rested after the plaintiff had concluded his case.

■ Throughout the trial, plaintiff was not clear as to the theory of his action. At times he indicated that the action was based on an account stated, and, then, again, he seemed to take the position that his right of recovery was based upon an implied contract. Unquestionably the determination of the Commissioner of Internal Revenue of an overassessment, and the making of the delivery of his certificate to that effect, gives rise to a cause of action thereon by the taxpayer. U. S. v. Kaufman, 96 U. S. 567, 24 L. Ed. 792; U. S. v. Real Estate Savings Bank, 104 U. S. 728, 26 L. Ed. 908; Bonwit Teller & Co. v. U. S., 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018.

■ Plaintiff of course, contends that his right of recovery is based upon the certificate of overassessment. If, however, this is a suit on an account stated, manifestly there can be no recovery. It was in March, 1927, that plaintiff was informed that there would be a deficiency in tax of $10,319.08 for 1924, and an overassessment of $12,123.10 for 1925. The taxpayer, through his agents, protested the audit. Conferences were had between the taxpayer's agents and the Commissioner, and on account thereof, the proposed deficiency for the year 1924 was reduced to the sum of $3,647.35. An agreement form consenting to the determination of the 1924 tax and to the immediate assessment of the deficiency was signed by Mr. Kilbourne, the taxpayer's representative, and on September 8, 1927, the plaintiff was notified of the reduction in the deficiency and the assessment thereof on the basis of the consenting agreement signed by his representative. The plaintiff accepted the refund check after he had been notified of the application of the 1925 overassessment upon the 1924 deficiency. The plaintiff knew that his agents and the Commissioner had been ne-

gotiating a settlement and adjustment of the 1924 and 1925 taxes. He was aware that the Commissioner had determined that the stock transaction in question took place in 1924, rather than 1925, so far as income was concerned, and the determination by the Commissioner that this income occurred in 1924 rather than 1925 accounted for the overassessment in 1925 and the deficiency in 1924. It is not necessary for the court to determine the authority of plaintiff's representatives to effect a binding settlement—see Botany Mills v. U. S., 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379—but plaintiff, being informed of the settlement, and accepting the proceeds thereof, and recognizing the authority of his agents by the acceptance of the refund check, could scarcely be permitted to take the position at this late date that the settlement procured by his agents was not a finality. At the trial of this case, in response to this question: "And Mr. Love and Mr. Kilbourne had the authority to do for you the same as if you were acting for yourself with regard to matters pertaining to your tax liability for the years 1924 and 1925—is that correct?" the plaintiff made the following answer: "Yes." And the following question was asked him: "And any agreements they signed you were perfectly willing to admit that they had authority to sign them?" He answered "Yes." It is indisputable that the account stated between the parties was ratified by the plaintiff when he was fully aware of all the circumstances surrounding the adjustment. If an account stated is an agreed balance of accounts, then it would seem clear that the controversy herein was concluded by the acceptance of the refund check by the plaintiff and his long delay in repudiating the conduct of his agents.

The simple recital of the undisputed facts irresistibly leads one to the conclusion that plaintiff is now estopped to contend that the adjustment and compromise of the 1924 and 1925 tax years was not final; but, assuming that, notwithstanding the facts above referred to, the plaintiff is in a position to prosecute this action on the theory of an implied contract, it is clear that there can be no recovery. In the brief submitted by plaintiff, it is contended that the application of a portion of the overassessment upon the alleged deficiency for the year 1924 was illegal and unauthorized, and that it was not necessary to file any claim for refund for the recovery of the overassessment as a condition precedent to the bringing of this suit—citing Wm. J. Friday & Co. v. United States (C. C. A.) 61 F.(2d) 370. Of course, if this was a suit to recover the 1925 overassessment, it could be logically maintained that, where the cause of action pleaded is the government's promise to pay implied on delivery of the Commissioner's certificate of overassessment, such a suit is not one for refund of a tax illegally assessed, but rather one that is based on the government's promise to pay the amount it had unlawfully obtained from the taxpayer. The Commissioner, however, in determining the overassessment and ascertaining the amount of the overassessment, was authorized to apply such overassessment to any tax that might be due from the taxpayer; consequently, if there was a deficiency in the tax for the year 1924, the Commissioner was justified in applying a portion of the overassessment to the liquidation of such deficiency. Therefore, the burden that rests upon the plaintiff in this case is not to prove that he is entitled to a return of a portion of the 1925 tax, but rather the burden rests upon him to prove that there was no tax due the government from him for the year 1924, and consequently, that the pretended allocation of this overassessment to the 1924 deficiency was illegal and unauthorized. In other words, if it is admitted that there was a deficiency due for the year 1924, then, clearly, the government was justified in making an application of the 1925 overassessment. Apparently, plaintiff at the trial recognized that the burden rested upon him to prove that the application of the 1925 overpayment was wrongfully applied to the 1924 deficiency. It should be noted that in the case of Friday v. United States, supra, the portion of the overassessment was applied by the Commissioner as a credit against additional income and profit for a preceding year, which was admittedly barred by the statute of limitations. It may well be argued that it would have been a futile gesture to have filed a claim for refund where the claim for refund is barred by the statute of limitations, which would be purely a question of law. There would be no occasion, under such circumstances, to present any claim to the Commissioner as a condition precedent to an action brought to recover an overassessment on the theory of an implied contract. At any event, the court is convinced that the decision in the Friday Case is not applicable to the case at bar. In this case, plaintiff's complaint is predicated on the theory that a filing of a claim for the refund of the 1924 overpayment is a condition precedent to the commencement of this action. In fact, plaintiff expressly recognized that burden during the trial. Consequently, if it is in-

cumbent upon the plaintiff to prove that there was no deficiency in the year 1924, this action simply resolves itself into a situation whereby, on account of the application of an over-assessment credit to the 1924 deficiency, plaintiff seeks to recover a refund of the overpayment of such taxes by reason of such credit. That is, instead of paying the 1924 deficiency tax of $4,120.78 in cash, and thereafter bringing an action for a refund, a payment has been made by a credit, and before plaintiff is entitled to recover any refund for overpayment of 1924 taxes, he necessarily must, comply with all the rules and regulations with reference to the filing of a claim with the Commissioner as a condition precedent to the bringing of such an action.

The only evidence in the case with reference to the claim filed by the plaintiff appears from the quotation above set forth in the letter of March 26, 1931. Apparently, plaintiff took the position that the deficiency assessment was illegal because the Commissioner failed to issue the 60-day deficiency notice as required by section 274 (a) of the Revenue Act of 1926. No other basis for a refund was ever presented to the Commissioner. At the trial, plaintiff introduced some testimony to the effect that this exchange of stock upon which the tax was based actually took place in the year 1925, and that the certificates were not received by him until February 6, 1925. Furthermore, it is contended that the only books kept by the taxpayer were on the cash receipt basis, and that his income was reported to the government for these years on such basis. However, plaintiff is not now in a position to dispute the correctness of the Commissioner's deficiency assessment for the year 1924 on the grounds that this income was not received until 1925. The claim for refund contains no such claim. It. is well settled that the ground upon which the refund is demanded must be the same before the Commissioner as the basis for recovery that is instituted before the court.

In the case of Tucker v. Alexander (C. C. A.) 15 F.(2d) 356, 357, the court stated: "Therefore, we think it is a required precedent or limitation that the action shall be upon the same grounds and only such as are presented in the claim. As no ground in this petition is stated in the claim for refund, we think this petition has no standing under the issues tendered by the petition."

In the case of Red Wing Malting Co. v. Willcuts (C. C. A.) 15 F.(2d) 626, 634, 49 A. L. R. 459, the court stated: "The precise ground upon which the refund is demanded

must be stated in the application to the Commissioner, and we think, if that is not done, a party cannot base a recovery in the court upon an entirely different and distinct ground from that presented to the Commissioner."

Consequently, the correctness of the Commissioner's decision in determining that the income on this stock transaction was received in the year 1924 is not before the court. It might be observed, furthermore, that plaintiff's evidence is very inconclusive that the stock transaction as income did take place in the year 1925, and it conclusively appears that the plaintiff accepted a refund from the Commissioner on the theory that the transaction did not result in income in 1925, but in 1924. Can he now, in view of these circumstances, be permitted to reverse his position? We think not. If plaintiff has any grounds at all for the recovery of any overpayment of the 1924 taxes by reason of the applied credit, it must be based upon the illegality of the 1924 deficiency assessment, as set forth in his claim for refund.

There may be some question as to the technical compliance of the Commissioner with section 274 (a) of the Revenue Laws of 1926, but a summary of the steps taken by the Commissioner and the negotiations had between the parties clearly demonstrate the fallacy of plaintiff's position. The purpose of the 60-day notice is to enable the taxpayer to appeal to the Board of Tax Appeals. Apparently, the advantage given to the taxpayer in appealing to the Board of Tax Appeals is due to the fact that he is not required to pay the tax, but can have the deficiency assessment reviewed by the Board; while if he seeks relief from the courts, he must first pay his tax and then bring an action for the recovery thereof. The Revenue Act of 1926 is very clear that the 60-day notice must be given to the taxpayer before any deficiency tax can be assessed and collected. It was in March, 1927, that the Commissioner mailed a registered letter to the plaintiff informing him of the deficiency. True, thereafter negotiations were had which resulted in a reduction of the deficiency and a recomputation of the tax liability for 1924. It was on September 8, 1927, that plaintiff was formally notified of the conclusions arrived at after a conference between the Commissioner and plaintiff's representatives. It does not appear whether the letter of September 8, 1927, was registered or not. It does appear that the credit of the overpayment of the 1925 tax was made on the 1924 deficiency as of November 3, 1927. Now, then, if it is assumed that the March 26,

1927, registered letter was not the 60-day notice demanded by the statute, it must be obvious that although plaintiff on September 8, 1927, was notified in writing of the deficiency assessment for 1924 and the application of the 1925 overassessment thereon, he took no steps whatsoever to perfect any appeal to the Board of Tax Appeals, or to require the Commissioner to furnish a notice contemplated by the statute, but he delays for four years and then brings this action on an implied contract for the recovery of an overpayment of the 1924 taxes. If there is any technical defect in the giving of the 60-day notice, such noncompliance has been clearly waived by the taxpayer, and, candidly, the court can see no prejudice that has resulted to the plaintiff. He never sought to perfect his right of appeal to the Board of Tax Appeals, and if he had appealed to the Board, he would have been foreclosed from bringing an action in this court.

In the case of Lucas v. United States, 59 App. D. C. 159, 36 F. (2d) 1015, the Court of Appeals of the District of Columbia denied a writ of mandamus requiring the Internal Revenue Commissioner to issue a registered letter showing plaintiff's tax liability in order to give the Board of Tax Appeals jurisdiction. The facts of that case and the conclusions are sufficiently indicated in the syllabus, which reads as follows: "Where Commissioner of Internal Revenue, on April 25, 1925, by registered letter, notified plaintiff of rejection of plaintiff's claims for refund and abatement of tax assessments, with certain exception, and on December 17, 1925, after oral hearing, notified plaintiff by unregistered letter, actually received by plaintiff, that conclusions set forth in previous notice were sustained and case deemed closed, and plaintiff thereafter took no action whatever for over two years, when it first demanded that notice of Commissioner's final determination should be sent to it by registered mail, as required by Revenue Act 1924, §§ 274 (a) (d), 279 (b), 26 USCA §§ 1048 note, 1051 note, 1063 note, to give Board of Tax Appeals jurisdiction of appeal, petition for mandamus to compel Commissioner to issue such letter by registered mail, filed two years and six months after actual notice of said final determination, should have been denied because of laches."

Furthermore, it is clear that under section 274 (d), 26 USCA § 1048b, the 60-day notice may be waived by the taxpayer. Can there be any question but that the plaintiff, with full knowledge of the facts, adopted the agreements of his representatives in consenting to an immediate assessment. It is obvious that plaintiff did approve this compromise, and did consent to the immediate assessment of the deficiency, and any 60-day notice required by the statute was waived thereby. Plaintiff's contentions regarding the illegality of the deficiency assessment are devoid of merit. The whole record presents an attempt to revive a claim against the government that was settled and determined by the parties nearly six years ago.

The court adopts the foregoing as its findings of fact, and as conclusions of law, the court finds:

(1) That plaintiff take nothing by his cause of action herein and that the same be dismissed.

(2) Let judgment be entered accordingly.