### WEIHMAN et al. v. UNITED STATES.
### No. 15182.

District Court, E. D. Pennsylvania.
April 7, 1933.

John E. Hughes, of Chicago, Ill., and Rawle & Henderson, of Philadelphia, Pa. (Joseph W. Henderson, of Philadelphia, Pa., of counsel), for plaintiffs.

Edward W. Wells, of Philadelphia, Pa., for the United States.

KIRKPATRICK, District Judge.

This is a suit by the receivers of a corporation to recover a balance ($43,836.67) of taxes paid by the corporation for the year 1919. Although the Commissioner of Internal Revenue found that there was an overassessment of $82,325.75 for that year, the defendant has refused to pay the balance claimed, upon the ground that the claim for refund filed by the taxpayer before bringing suit did not cover that portion of the overassessment. The period of statutory limitation has expired, so that no new suit can be begun.

By written stipulation the parties in this case waived trial by jury and the case was tried to the court without a jury. A stipulation of facts was filed which is adopted by the court as its findings of fact. Such additional facts as are stated in this opinion may also be taken as special findings.

Briefly summarized, the facts are as follows:

The taxpayer's return for the year 1919 was filed November 5, 1920, and the income and profits tax of $145,833.93 disclosed therein duly paid. Waivers extended the time for assessment and collection of these taxes until December 31, 1926.

On February 12, 1926, the commissioner sent the taxpayer a 60-day letter dealing with its returns of income and excess profits tax for the two years, 1918 and 1919. The let-

ter stated that, for the year 1918, a deficiency of $153,077.07 had been determined against the taxpayer, and that, for the year 1919, an overassessment in the amount of $82,325.75 had been found in its favor. In particularizing the 1919 overassessment, the letter dealt with the two phases of the return—net income and invested capital. The overassessment, it appeared, arose entirely by reason of a reduction of the net income from $440,291.87, as reported, to $189,550.60, which resulted in a reduction of both the income tax and profits tax. On the profits tax side, the invested capital was reduced from $1,110,323.74, as reported, to $828,454.40. This last, of course, was a finding against the taxpayer, and, had not the income been greatly reduced, would have resulted in an additional profits tax.

Promptly upon receiving this letter the taxpayer filed a claim for refund of the 1919 overassessment in the amount found, or $82,325.75. Less than three weeks later it filed its petition with the Board of Tax Appeals, appealing from the deficiency assessment for 1918.

The claim for refund specified the "character of assessment or tax" for which it was filed as "income and profits tax." No detailed facts were stated, but the facts set forth in the commissioner's 60-day letter were incorporated by the following reference: "This claim is filed pursuant to a Treasury Department Letter received by us dated February 12, 1926, which sets forth * * * an overassessment in the sum of $82,325.75 (as above) for the year 1919." In the petition appealing to the Board of Tax Appeals (as subsequently amended) the taxpayer set forth as a ground for appeal the failure of the commissioner to add to its invested capital a number of items (paid-in surplus, accounts receivable from officers, etc.) which it claimed should have been allowed in order properly to determine its profits tax.

It thus appears that from April, 1926, the commissioner had pending before him two practically contemporaneous proceedings initiated by the same taxpayer, one to defend against a deficiency assessment of profits and income tax for 1918, which raised the question of invested capital, and the other to recover an overassessment of income and profits tax for 1919, in which the commissioner's determination of invested capital was not challenged.

Both proceedings received administrative attention from the commissioner, and on July 18, 1929, the one based upon the claim for refund of the 1919 taxes was terminated by a certificate of overassessment sent by the commissioner to the taxpayer notifying it that "a consideration of all the claims (if any) filed by you for the year 1919" indicated that there had been an overassessment for that year in the amount of $89,473.11. Of this amount, $45,636.44 was allowed as a refund, and $43,836.67 was disallowed as "due to adjustments not covered by claim for refund."

The certificate of overassessment was based upon a decision of the commissioner (Decision No. 197) captioned as of the 1919 proceeding filed the day previous which contained an elaborate revision and restatement of the various items going to make up the taxpayer's tax liability. By this decision the income was increased over that given as the basis for the 60-day letter—thus reducing the overassessment of income tax appearing by that letter. Four pages of the decision were devoted to a redetermination of the invested capital resulting in its increase from $1,110,323.74 as reported, to $2,409,829.88 and a consequent reduction of profits tax liability of $43,836.67, which, however, as stated above, was disallowed.

The commissioner's statement that this balance was the result of adjustments not covered by the claim for refund was strictly correct. The additions to invested capital found allowable by Decision No. 197 had not been claimed, nor for that matter had any increase of invested capital been even mentioned in the 60-day letter of February 12, 1926, which was the basis of the claim for refund. Naturally, the taxpayer had not in his claim for refund raised the question of the invested capital on which his 1919 profits tax was based (although the commissioner's 60-day letter had decreased it) because the profits tax itself was actually reduced by that letter, through reduction of income.

Now it will be remembered that the appeal from the 1918 deficiency assessment (involving principally invested capital) was pending during the time that he was considering the 1919 claim for refund. And it will also be borne in mind that, as a matter of accounting, invested capital, once determined for any year, is carried on through subsequent years in the same amount without change except as newly acquired information may cause it to be revised. Therefore, whatever information or data relating to invested capital the taxpayer submitted in one proceeding went to make a determination which was equally available in both. Though, as a matter of form and caption, it may have

referred to the year 1918, as a practical matter it bore upon all subsequent years as well.

The appeal from the deficiency assessment for 1918 (to which had been added appeals from deficiency assessments for 1920–22 and 23) was dealt with by the commissioner through a Special Advisory Committee. To this committee the taxpayer had submitted comprehensive information relating to its invested capital, and entered into conferences with it on two occasions, to wit, June 25, 1928, and July 10, 1928.

The reason why a readjustment of invested capital was allowed and reported in the decision on the claim for refund of the 1919 tax appears from the record of the 1918 tax appeal. On September 12, 1928, in the latter proceeding, the taxpayer submitted to the committee a paper entitled "Agreement to Stipulate" by its counsel, reading in part as follows; "Subject to the approval of the Commissioner of Internal Revenue, the following adjustments (together with such other adjustments as arise as a proper and necessary incident thereto) are agreed to as a basis for closing the case." Then followed a list of thirteen items, three of which deal with additions to be allowed to invested capital. The agreement closes with the following: "It is also agreed that the 1919 tax liability is to be recomputed on a basis reflecting changes in net income and invested capital as shown above."

The Special Advisory Committee made an exhaustive report which appears to have reached the commissioner in April, 1929, or thereabouts. It closes with thirteen recommendations each dealing with a corresponding item of the agreement to stipulate. In addition, it recommends that the net income *for the year 1919* be increased by $103,510.-99 and closes: "The changed tax liability resulting from the above adjustment is contained in the schedules attached hereto and made a part hereof. The taxpayer has signed agreement to stipulate, consenting to the closing of the case on this basis." One of the schedules attached shows a "Corrected tax liability" and an "overpayment" for 1919 which involves, among other things, a determination of an overassessment of $43,836.67 excess profits tax for that year. The commissioner indorsed the report of the Special Advisory Committee "Approved" on May 3, 1929.

Even if the agreement to stipulate be taken as no more than an offer by the taxpayer, as the government contends, it was unquestionably accepted and acted upon by the commissioner. It is the basis of a large part of the report of the Special Advisory Committee which the commissioner specifically approved.

Now it is plain that from the time the agreement to stipulate in the 1918 proceeding was acted upon by the commissioner the two proceedings were practically consolidated. Apart from the express terms of the agreement itself, it appears from the contents of Decision No. 197 upon which the final letter was based that the commissioner had been dealing with the two proceedings as one. If it is necessary to correlate the situation in this case to any general rule of law, it may be said that when the commissioner, under the agreement, proceeded to recompute the 1919 tax liability "upon a basis reflecting changes in * * * invested capital" made from data derived from the 1918 appeal, he waived formal defects in the pleadings of the former. Or it may be said equally well that he allowed the claim for refund to be supplemented and amended by the particulars set forth in the third amended petition for appeal which was filed about that time.

At the beginning of the proceedings on the claim for refund the commissioner was in a position, if he so desired, to stand upon the technical insufficiency of the claim. All that would have been necessary would have been for him to reject it upon that ground and decline to consider it further. Instead, he elected to deal with the whole 1919 tax (profits as well as income) on its merits in conjunction with his consideration of the 1918 tax, thus according to the taxpayer in the consolidated proceedings the benefit of any properly pleaded cause of action in either.

In United States v. Memphis Cotton Oil Company, 288 U. S. 62, 53 S. Ct. 278, 281, 77 L. Ed. 619 (January 9, 1933), the court said: "The Commissioner has the remedy in his own hands if the claim as presented is so indefinite as to cause embarrassment to him or to others in his Bureau. He may disallow the claim promptly for a departure from the rule. If, however, he holds it without action until the form has been corrected, and still more clearly if he hears it, and hears it on the merits, what is before him is not a double claim, but a claim single and indivisible, the new indissolubly welded into the structure of the old."

This language is applicable here. In the case at bar the commissioner holding the claim without action, heard it and heard it on the merits. True, the form was never cor-

158

rected (that is, it was never formally amended), but the proceedings before the commissioner was certainly such as to give the taxpayer to understand that formal amendment would be unnecessary. In Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018, a letter from the taxpayer, accompanied by a formal waiver requested by the Bureau, was held the equivalent of a notice of claim where the commissioner so treated it.

■ In the same case and in that of United States v. Henry Prentiss & Company, Inc., 288 U. S. 73, 53 S. Ct. 283, 285, 77 L. Ed. 626 (January 9, 1933), Judge Cardozo clearly indicated the method of approach which ought to be adopted toward these questions of what may be called the pleadings in administrative proceedings before the Treasury Department. The analogies of pleadings in a law suit are given due consideration "But," the court said, "the analogies of pleadings are not decisive of the controversy before us, wherever they may point and however helpful they may be. To make our conclusion sound, we must keep in mind also the necessities and realities of administrative practice." Again, "Definitions and analogies borrowed from pleadings in a lawsuit will have their place and recognition, but in due subordination to differences of end and aim." Pursuing this guide, the instant case presents a practical consolidation of two suits or proceedings between the same parties, both based upon the same general cause of action. "The ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability." United States v. Memphis Cotton Oil Company, supra. "A statement, without explanation, to the effect that overpayments have been made in an aggregate amount is broad enough to cover any and all grounds for reassessment and return." United States v. Henry Prentiss & Company, Inc., supra.

From an administrative point of view it was the only practical and sensible way to handle the whole situation and, obviously, the Commissioner did not think he was in danger of being misled or prejudiced as to his adversary's case nor did he, until the last minute, indicate the slightest intention of invoking the provisions of the statute and regulations, designed solely to protect him against such an event. The 1918 proceeding gave notice that invested capital was in issue between him and the taxpayer. In the course of that proceeding the invested capital had to be determined and was determined upon information furnished by the taxpayer. An agreement to use the results thus obtained, in both proceedings, was in the interest of simplicity and dictated by common sense.

### Conclusions of Law.

1. The claim for refund filed in this case, standing alone, is wholly insufficient as a basis for the suit.

■ 2. The commissioner may waive the insufficiency of the claim for refund.

■ 3. Such waiver may appear at any time during the proceedings upon the claim and is not necessarily confined to the commissioner's final action in allowing or disallowing the claim.

4. In this case, the proceedings disclose a practical consolidation of the two proceedings before the commissioner—the 1919 claim for refund and the 1918 deficiency assessment.

5. The consideration of the two proceedings together by the commissioner under the agreement to stipulate and as shown by the subsequent conduct of the proceedings amounted to a waiver of the insufficiency of the claim for refund in the 1919 proceeding.

■ 6. Having waived such insufficiency and both parties having dealt thereafter on the basis of such waiver, the commissioner could not withdraw it by refusing the refund in his final action, even though he then asserted the insufficiency of the claim as the ground for his refusal.

If the defendant desires to submit specific requests for conclusions of law, it may do so.

Judgment may be entered for the plaintiffs in the amount claimed.