## UNITED STATES v. ELGIN NAT. WATCH CO.
### No. 4892.

Circuit Court of Appeals, Seventh Circuit.
Aug. 2, 1933.

Dwight H. Green, U. S. Atty., of Chicago, Ill. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

Alfred T. Carton and John E. Hughes, both of Chicago, Ill. (Gardner & Carton, of Chicago, Ill., of counsel), for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

The pertinent facts are as follows: On October 11, 1919, taxpayer's return was filed for the year ending April 30, 1919, showing a tax of $1,094,037.20, and it was paid as follows:

June 14, 1919.................$290,000.00
October 13, 1919............... 257,018.60
January 13, 1920.............. 273,509.30
September 7, 1920............. 273,509.30

On October 27, 1920, an amended return was filed showing a tax liability of $988,110.-99, which resulted in the issuance of a certificate of overassessment to taxpayer on October 25, 1922, of $101,741.85, and this amount having been a part of the payment made on September 7, 1920, was refunded to the taxpayer. On August 30, 1924, taxpayer was notified of a proposed deficiency of $340,-645.44, against which it filed a protest on September 11, 1924, objecting to certain reductions of and additions to the inventory, and the erroneous inclusion of an employees' pension fund in the item of income, and further alleging that the assessment and collection were barred by the statute of limitations.

On September 12, 1924, taxpayer filed its claim for refund for the entire amount of the tax paid by it which after deducting the amount refunded on October 25, 1922, was $992,295.35. That claim which constitutes the basis of one of the principal contentions of this controversy contains the following clause:

"This claim is filed for the refund of any amount determined to be overpaid as a result of the audit of claimant's return for the year ended April 30, 1919. See brief dated September 11, 1924 and supplemental information filed with the Commissioner of Internal Revenue."

On October 1, 1924, a jeopardy assessment of $340,645.44 was made, to which taxpayer filed its claim for abatement on October 15, 1924. The refund hereinbefore mentioned of $149,517.80 being credited against the jeopardy assessment, left the amount in controversy in the abatement issue, $191,127.-64. The basis for this claim in abatement was the same as that of taxpayer's protest of September 11, 1924. In support of the claim taxpayer filed seven briefs from March 25, 1925, to July 16, 1926, which will be referred to hereafter. On June 25, 1926, Commissioner notified taxpayer that its claim for *abatement* had been denied,[1] stating in the letter that its claim for refund of $992,295.35 was on file.

At the trial of the cause in the District Court, it was stipulated that a conference had been held between taxpayer's representatives and the Bureau of Internal Revenue, a report of which was admitted in evidence. That report, signed by the Acting Chief of the Special Assessment Section, the section which assessed taxes under section 328 of the Revenue Act of 1918 (40 Stat. 1093), is to the effect that the action of the Unit in denying the *special assessment* because abnormalities had not been proven should be sustained. It was further stipulated that the supplemental information referred to in taxpayer's petition for refund was contained in its seven briefs hereinbefore mentioned. The parties also stipulated that taxpayer's refund claim was rejected by the Commissioner, September 24, 1931.

Taxpayer petitioned for a review of the Commissioner's decision on August 23, 1926, and the Board, on June 4, 1931, determined that there had been an overpayment of $431,-963.79. It was subsequently stipulated that neither party would file a petition to review the Board's decision. The Commissioner refunded $149,517.80 with interest, but refused

---

[1] Elgin National Watch Company, 86 East Randolph Street, Chicago, Illinois.

Sirs: Your claim for abatement of a deficiency in tax amounting to $191,127.64 assessed against you for the taxable years 1919 and 1920 has been carefully considered by this office, and it is proposed to allow the said claim for $79,107.66 and to reject it for $112,019.98, as computed upon the enclosed statement.

Your briefs dated September 11, 1924, March 19, 1925, May 12, 1925, June 18, 1925, and June 25, 1925 have been carefully considered in connection with your claim for the abatement of $191,127.64 income and profits taxes for the years 1919 and 1920, and your claim for the refund of $992,295.35 income and profits tax for the taxable year 1919. Your contentions relative to the contributions made to Pension Funds have been denied.

Claims for the abatement of $191,127.64 income and profits taxes for the taxable years 1919 and 1920 and for the refund of $992,295.35 income and profits taxes for the taxable year 1919 are on file.

to refund the balance, assigning as a reason therefor that no claim for refund based upon a request for special assessment had ever been filed by taxpayer.

The Revenue Act of 1926 gives the taxpayer a right to sue to recover an overpayment found by the Board as to any amount collected in excess of an amount computed in accordance with the decision of the Board which has become final. Chapter 27, § 284 (d) and (d)(2), 44 Stat. 66, 26 USCA § 1065 (d) and (d)(2). However, the amount which may be so recovered is limited by section 284 (e), which as amended by section 507 of the Revenue Act of 1928 (26 USCA § 1065 (e) reads as follows:

"If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer as provided in subdivision (a). Unless claim for credit or refund, or the petition, was filed within the time prescribed in subdivision (g) for filing claims, no such credit or refund shall be made of any portion of the tax paid more than four years (or, in the case of a tax imposed by this title, more than three years) before the filing of the claim or the filing of the petition, whichever is earlier."

Subdivision (g) of section 284 (26 USCA § 1065 (g) provides among other things that if a taxpayer has, on or before June 15, 1925, filed a waiver of his right to have the taxes due for the taxable year of 1919 determined and assessed within five years after the return was filed, then such credit or refund relating to the taxes for that year shall be allowed if the claim therefor is filed within four years from the time the tax was paid. Subdivision (h) of section 284 (26 USCA § 1065 (h) provides that the section, except as provided in subdivision (d), shall not bar from allowance a claim in respect of a tax for the taxable year 1919 if such claim is filed before the expiration of five years after the date the return was due.

The government contends (1) that the original claim for refund, although timely filed, does not afford the right of recovery; (2) that, if the briefs in which the request for special assessment was made, are treated as original claims, they were filed too late be-cause the taxpayer never filed a waiver such as is contemplated by section 284 (g); (3) that these briefs cannot be treated as amendments to the original claim.

■ We do not think it is necessary to decide whether under the circumstances taxpayer is to be considered as having filed a waiver within the contemplation of subdivision (g), because we are convinced that the briefs which were filed do not constitute a departure from the original claim, but must be considered as amendments, and were sufficient, together with the original claim, to afford taxpayer the relief sought. United States v. Factors & Finance Co., 288 U. S. 89, 53 S. Ct. 287, 77 L. Ed. 633.

■■ The original claim was all inclusive in its character, and if the Commissioner or his agents thought that it should have been more specific, that fact in all fairness should have been communicated to taxpayer according to the usual custom of the Department. It is true that the present regulation of the Department requires that a claim of this sort must set forth in detail each ground upon which it is based. Treasury Decision 4265. However, that regulation is applicable only to claims filed on or after May 1, 1929. The regulation in force at the time this claim was filed on September 12, 1924, merely provided that all facts should be clearly set forth. Article 1063 of Regulations 62. The Commissioner made no objection whatever to the form of the claim before the Board of Tax Appeals, and raised no question of that character until long after the decision of the Board in taxpayer's favor. That the Commissioner may waive such an objection to form we think there can be no doubt. Lehigh & Wilkes Barre Coal Co. v. United States (D. C.) 38 F.(2d) 637; Union Trust Co. v. McCaughn (D. C.) 24 F.(2d) 459; Weihman and Casey v. United States, 4 F. Supp. 155.

The District Court found that no objection to the sufficiency of the refund claim filed by the petitioner was communicated to it by the Bureau of Internal Revenue, and that that Bureau received the claim and held hearings thereon at which the claim to assessment of taxpayer's profits under section 328 was considered and discussed, and at which hearings no objection was made to the sufficiency of the claim, nor was any objection to its sufficiency made at the hearings before the United States Board of Tax Appeals. The court also found that the Commissioner filed computations of taxpayer's profits tax under section 328 with the Board of Tax Appeals, in

which he arrived at the exact amount of overpayment which the Board afterwards found. The government does not contend that these findings are not supported by substantial evidence. Under these circumstances the right to object to the form was clearly waived.

Aside from the form of the original claim, it was made more certain by the seven briefs which were filed by taxpayer prior to the Commissioner's rejection of its claim, beginning with March 25, 1925, more than six months after the original claim had been received and retained by the Commissioner without objection. The first five briefs were primarily in support of the taxpayer's claim for abatement of the jeopardy assessment which had been made by the Commissioner shortly following the filing of the claim for refund. The fifth brief which was filed on March 22, 1926, also mentioned for the first time the matter of assessment under section 328, and the last two briefs dealt with that matter exclusively. It is argued, however, that the Commissioner finally rejected taxpayer's claim on October 15, 1924, and that the briefs, which were filed after that time, were too late for consideration. The government is not in a position to urge this objection because it is stipulated that the claim was not finally rejected until September 24, 1931, and that finding is well supported by evidence. This being true, the amendments relate back to the original claim, and authorize the recovery. United States v. Factors & Finance Co., supra; United States v. Memphis Cotton Oil Co., 288 U. S. 62, 53 S. Ct. 278, 77 L. Ed. 619. Those cases hold that a claim for a tax refund which has been seasonably filed, but which fails to conform to Treasury Regulations, may be amended at any time before the original claim has been finally rejected, although it be after the time when a wholly new claim would be barred by limitation.

The government seeks to distinguish those cases from the instant one in that there the claims were of sweeping generality, and for that reason were subject to objection for lack of form, and if the Commissioner had considered the claims he necessarily would have discovered the errors to which the amendments later directed his attention. The original claim filed by taxpayer is of equally sweeping generality, and if the Commissioner had considered it, he would have easily discovered, as did the Board and the District Court, that taxpayer's invested capital as defined in section 328 of the statute could not be determined. It will not do to say that this fact did not occur to him, for it is quite clearly involved in the original claim which sought a refund of the entire tax. In Lewis v. Reynolds, 284 U. S. 281 at page 283, 52 S. Ct. 145, 146, 76 L. Ed. 293, the court said:

"* * * The ultimate question presented for decision upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability."

The government has filed a motion to reverse and remand this cause on the ground that it is a suit upon an account stated and not for the recovery of a tax erroneously assessed and collected as contemplated in section 24, par. 20 of the Act of February 24, 1925, 43 Stat. 972, 28 USCA § 41 (20), and should therefore have been brought in the Court of Claims rather than in the District Court. In support of that contention it relies on Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018, and Moses v. United States (C. C. A.) 61 F. (2d) 791. Those cases are distinguishable from this one in that they were based on the Commissioner's certificate of overassessment allowing the refund claim, which certificate had been delivered to the claimant. The court held that the actions were based on accounts stated and properly brought in the Court of Claims. In the instant case, the Commissioner had issued no such certificate, and there is no basis for an account stated. The District Court had jurisdiction of the subject-matter. Schwab v. United States (C. C. A.) 17 F.(2d) 34; United States v. Finch (C. C. A.) 201 F. 95, Ann. Cas. 1916A, 319.

Judgment affirmed.