106 T.C. No. 27

UNITED STATES TAX COURT

CONNECTICUT MUTUAL LIFE INSURANCE COMPANY AND CONSOLIDATED
SUBSIDIARIES, Petitioner <u>v</u>. COMMISSIONER OF INTERNAL REVENUE,
Respondent

Docket No. 4291-94.                          Filed June 26, 1996.

P created a voluntary employees' beneficiary
association (VEBA) trust designed to fund P's future
holiday pay obligations to its employees.  On or about
Dec. 27, 1985, P contributed $20 million to the VEBA.
This $20 million contribution significantly exceeded
the amount of P's average annual holiday pay
obligation, which was approximately $2 million.  P
deducted the entire $20 million contribution as an
ordinary and necessary business expense on its 1985
Federal income tax return.

<u>Held</u>:  P's $20 million contribution to the VEBA in
1985 provided P with substantial future benefits.  P is
therefore not entitled to deduct its $20 million
contribution in 1985.  <u>INDOPCO, Inc. v. Commissioner</u>,
503 U.S. 79 (1992), applied.

Matthew J. Zinn, J. Walker Johnson, and Tracy L. Rich, for petitioner.

Jill A. Frisch and Randall P. Andreozzi, for respondent.

RUWE, Judge:   Respondent determined a deficiency of $7,372,712 in petitioner's 1985 Federal income tax.  The sole issue for decision is whether petitioner is entitled to a 1985 deduction for its $20 million contribution to a voluntary employees' beneficiary association (VEBA) trust.  In order to prevail, petitioner must establish that the $20 million contribution was an ordinary and necessary business expense under section 162(a).[1]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference.  At the time its petition was filed, petitioner maintained its principal office in Hartford, Connecticut.

During all relevant periods, petitioner was a mutual life insurance corporation subject to tax under the provisions of sections 801-818.  Petitioner filed its Federal income tax

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

returns on a calendar year basis using the accrual method of accounting.

During 1984, two of petitioner's officers--Richard Bush[2] and Robert Chamberlain[3]--initiated discussions regarding VEBA's. These discussions began with an analysis of the benefits of using VEBA's to fund employee welfare benefits and eventually led to a recommendation that a VEBA be created.

VEBA I

On December 28, 1984, petitioner established a VEBA trust entitled the "Connecticut Mutual Life Insurance Company Voluntary Employee Beneficiary Trust".  This VEBA trust (VEBA I) was established to fund the cost of certain medical and group life insurance benefits.  Petitioner's $7,293,225 contribution to VEBA I funded benefits for 1 year.  Petitioner claimed a Federal income tax deduction for the entire contribution on its 1984 income tax return.

VEBA II

Since its incorporation in 1846, petitioner has provided its employees with annual fixed paid holidays.  Petitioner has never

---

[2]Mr. Bush had been an assistant counsel in petitioner's legal department since 1981.  In April 1985, Mr. Bush became an assistant vice president in the corporate tax department.

[3]During 1984, Mr. Chamberlain served as an assistant vice president in petitioner's human resources department.

failed to pay any employee for a fixed holiday when the employee was entitled to holiday pay under petitioner's employment policies.

Petitioner believed that the use of a VEBA to fund its holiday pay obligations would produce tax savings and allow petitioner to provide employee benefits more efficiently. In particular, petitioner anticipated that tax savings would result from the income tax benefit to be gained from an up-front deduction for the entire contribution to the VEBA, the reduction of surplus tax,[4] and the income tax saved because the VEBA's investment earnings would be tax exempt pursuant to section 501(c)(9).[5] Assuming that petitioner was allowed a complete

---

[4]Surplus tax is a term used in the life insurance industry to refer to the reduction that sec. 809(a)(1) imposes on a life insurance company's policyholder dividends deduction under sec. 808(c). The parties have stipulated that petitioner's use of VEBA II to fund holiday pay benefits saved petitioner surplus tax under sec. 809 in the following amounts:

| Year | Amount |
|------|--------|
| 1985 | $117,318 |
| 1986 | -0- |
| 1987 | 594,394 |
| 1988 | 64,260 |
| 1989 | -0- |
| 1990 | 60,112 |
| 1991 | -0- |
| 1992 | -0- |
| 1993 | -0- |

[5]Sec. 501(a) exempts from taxation VEBA's that provide for the payment of life, sick, accident, or other benefits to employees, or their dependents or designated beneficiaries,
(continued...)

deduction in 1985, and that the VEBA was not liquidated until 1998, Mr. Bush estimated that the present value of petitioner's tax savings on December 27, 1985, was $5,455,000.

On December 24, 1985, petitioner established the Connecticut Mutual Life Insurance Company Holiday Pay Plan[6] (holiday pay plan), and on December 27, 1985, petitioner established the Connecticut Mutual Life Insurance Company Employee Welfare Benefit Trust (referred to herein as VEBA II or VEBA II trust). Petitioner created the trust as a funding medium for its holiday pay plan. On or about December 27, 1985, petitioner contributed $20 million to the trust and deducted the entire contribution on its 1985 Federal income tax return as an ordinary and necessary business expense.

The holiday pay plan and the VEBA II trust essentially provided for the following:

---

[5](...continued)
provided that no part of the net earnings of the employer inures (other than through such payments) to the benefit of any private shareholder or individual. Sec. 501(c)(9).

On May 13, 1986, petitioner transmitted to the Internal Revenue Service a completed Form 1024 (Application for Recognition of Exemption Under Section 501(a) or for Determination Under Section 120) for the VEBA II trust. On Jan. 13, 1988, the IRS recognized the tax-exempt status of the VEBA II trust, determining that it qualified as a voluntary employees' beneficiary association pursuant to sec. 501(c)(9).

[6]Petitioner amended the holiday pay plan on Dec. 31, 1985.

(1)  Membership in the holiday pay plan consisted of petitioner's employees, with minor exceptions that are not relevant to our decision.

(2)  Members would receive holiday pay benefits for 8 fixed holidays[7] designated by petitioner for each plan year, commencing with the Memorial Day holiday on May 26, 1986.  However, if petitioner altered the number of fixed holidays designated for a particular plan year, the plan would only provide holiday pay benefits for the number of holidays then so designated by petitioner.

(3)  The trustees of VEBA II were to hold, invest, and distribute the trust fund in accordance with the terms in the trust agreement.  Petitioner was to make an initial contribution to the trust in 1985, and such additional contributions in subsequent plan years as petitioner deemed appropriate, to pay for plan benefits and administrative expenses on a continuing basis.  In the event there was an excessive accumulation of fund earnings in a particular plan year after payment of plan benefits and administrative expenses for that plan year, and the accumulation of fund earnings attributable to that plan year was not used to pay plan benefits or administrative expenses in the immediately succeeding plan year, then petitioner would direct

---

[7]During 1985, petitioner provided 10 paid holidays to its employees, of which 8 were fixed holidays on days specified by petitioner and 2 were floating holidays on days chosen by the individual employee.

the trustees to use these accumulated earnings to pay for other types of permissible benefits under section 501(c)(9) within a reasonable amount of time thereafter.

(4)  It was not permissible for any part of the trust fund to be diverted to purposes other than the benefit of the members as provided under the plan or for payment of administrative expenses of the trust fund.

(5)  The trustees were to invest the assets of the trust fund as a single fund, without distinction between principal and income, in common stocks, preferred stocks, bonds, notes, debentures, savings bank deposits, commercial paper, mutual funds, and in such other property as the trustees deemed suitable for the trust fund.

(6)  Petitioner was entitled to amend or terminate the plan and the trust agreement at any time.  Under no circumstances, however, could any assets of the fund revert to petitioner unless the contribution was made due to mistake of fact and returned within 1 year after such mistake became known.

(7)  Upon termination of the plan, the trustees were to apply all the remaining income and assets of the trust fund in a uniform and nondiscriminatory manner toward the provision of plan benefits or other life, sickness, accident, or similar benefits permissible under section 501(c)(9).

The trust agreement named the following officers of petitioner as trustees:  Robert W. Rulevich, vice president;

Robert E. Casey, senior vice president, and Walter J. Gorski, senior vice president and general counsel.

## The Operation and Administration of VEBA II

Petitioner's employee population during the period 1985 through 1994 was as follows:

| Year | Employee Population |
|------|---------------------|
| 1985 | 2,069 |
| 1986 | 2,165 |
| 1987 | 2,244 |
| 1988 | 2,118 |
| 1989 | 2,160 |
| 1990 | 2,082 |
| 1991 | 2,150 |
| 1992 | 2,076 |
| 1993 | 2,177 |
| 1994 | 1,765 |

The number of petitioner's employees eligible to receive benefits and whose holiday pay was funded pursuant to the holiday pay plan during 1986 and subsequent years was as follows:

| Year | Employees |
|------|-----------|
| 1986 | 2,106 |
| 1987 | 2,186 |
| 1988 | 2,012 |
| 1989 | 1,876 |
| 1990 | 1,728 |
| 1991 | 1,746 |
| 1992 | 1,664 |
| 1993 | 1,813 |
| 1994 | 1,645 |

The assets in VEBA II consisted of cash, State and municipal securities, and shares of a regulated investment company.  These assets were held in custodial accounts.  The amounts of investment earnings produced by the principal in the VEBA II trust were as follows:

| Year | Dividends and Interest |
|------|------------------------|
| 1986 | $1,642,171 |
| 1987 | 1,643,649 |
| 1988 | 1,649,955 |
| 1989 | 1,650,062 |
| 1990 | 1,641,441 |
| 1991 | 1,637,590 |
| 1992 | 1,633,604 |
| 1993 (per Form 990) | 1,605,327 |
| (per Form 5500) | 1,591,961 |
| 1994 | 1,536,469 |

Petitioner paid holiday pay directly to its employees who were covered by VEBA II.  The amounts of holiday pay benefits for fixed holidays paid to employees covered by the holiday pay plan were as follows:

| Year | Holiday Pay Plan Benefits Paid |
|------|-------------------------------|
| 1986 | $1,523,997 |
| 1987 | 1,896,719 |
| 1988 | 1,800,515 |
| 1989 | 2,041,601 |
| 1990 | 2,101,084 |
| 1991 | 2,150,267 |
| 1992 | 2,209,211 |
| 1993 | 2,287,228 |
| 1994 | 1,768,692 |

The investment earnings of the VEBA II trust were distributed from the trust to petitioner to reimburse petitioner for the amounts of holiday pay it paid to employees.  No portion of the $20 million principal in the VEBA II trust has been distributed.  After 1986, the investment earnings from VEBA II were insufficient to reimburse petitioner completely for its holiday pay obligations.  During the years 1987 through 1994, the difference between petitioner's fixed holiday pay obligations covered by VEBA II and the investment earnings from VEBA II was supplied from the following sources:

| Year | Petitioner's Holiday Payments for which it Received no Reimbursement | Transfers from VEBA I or III |
|---|---|---|
| 1987 | $214,948 | |
| 1988 | 150,845 | |
| 1989 | 391,426 | |
| 1990 | | $459,140 |
| 1991 | | 547,128 |
| 1992 | 550,869 | 2,100 |
| 1993 | 626,750 | |
| 1994 | 161,275 | |

On petitioner's annual statement filed with the State of Connecticut Insurance Department for 1985, petitioner treated the $20 million contribution to VEBA II as an expense and charged the contribution directly to its capital and surplus account.  In 1992, petitioner sought and received approval from the State Insurance Department to report the $20 million principal in VEBA

II as an asset.  Thereafter, petitioner reported the VEBA II trust as an admitted asset on its annual statements.  The change in petitioner's annual statement reporting resulted from its desire to change to an accounting practice similar to that adopted in the Statement of Financial Accounting Standards No. 87.

VEBA III

Subsequent to the establishment of the holiday pay plan and the VEBA II trust, petitioner established a third VEBA trust (VEBA III) in order to fund its wellness program and health services plans.  Petitioner contributed $10 million to VEBA III in 1986 but claimed no Federal income tax deduction in the year of contribution.[8]  In 1991 and 1992, petitioner liquidated VEBA III because of expense problems and capital and surplus management considerations.  Petitioner used the funds from VEBA III to pay employee benefits other than those provided under the wellness and health services plans.[9]  Over $1 million, for instance, was used to fund vacation pay for petitioner's employees.  By using the assets of VEBA III to pay employee benefit expenses, petitioner's expenses for the year were reduced, and petitioner was able to maintain surplus growth.

[8]See infra p. 22.

[9]Petitioner did not terminate these plans; they remained intact but were unfunded.

OPINION

The issue for decision is whether petitioner is entitled to a section 162(a) deduction for its $20 million contribution to the voluntary employees' beneficiary association (VEBA II) trust established to provide holiday pay to its employees.

Section 162(a) allows a deduction for all ordinary and necessary business expenses paid or incurred during the taxable year. With respect to deductions for employee benefits, section 1.162-10(a), Income Tax Regs., provides as follows:

> Amounts paid or accrued within the taxable year for dismissal wages, unemployment benefits, guaranteed annual wages, vacations, or a sickness, accident, hospitalization, medical expense, recreational, welfare, or similar benefit plan, are deductible under section 162(a) <u>if they are ordinary and necessary expenses of the trade or business</u>. * * * [Emphasis added.]

In order to qualify for deduction under section 162(a), five requirements must be satisfied. The item must: (1) Be paid or incurred during the taxable year; (2) be for carrying on a trade or business; (3) be an expense; (4) be a "necessary" expense; and (5) be an "ordinary" expense. <u>Commissioner v. Lincoln Sav. & Loan Association</u>, 403 U.S. 345, 352 (1971). A capital expenditure, in contrast, is not an "ordinary" expenditure within the meaning of section 162(a) and is therefore not currently deductible. <u>Id.</u> at 353; see sec. 263(a). Deductions from gross

income are a matter of legislative grace, and taxpayers bear the burden of demonstrating that they are entitled to the deductions they claim. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

The principal effect of characterizing a payment as either a business expense or a capital expenditure concerns the timing of the taxpayer's cost recovery. A business expense is currently deductible, while a capital expenditure is normally amortized and depreciated over the life of the relevant asset, or, if no specific asset or useful life can be ascertained, is deductible upon dissolution of the enterprise. INDOPCO, Inc. v. Commissioner, supra at 83-84.

The Supreme Court's decision in INDOPCO, Inc. v. Commissioner, supra, serves as the starting point for any discussion on the distinction between ordinary and necessary business expenses and capital expenditures. The Court emphasized at the outset "that the 'decisive distinctions' between current expenses and capital expenditures 'are those of degree and not of kind'". Id. at 86 (quoting Welch v. Helvering, 290 U.S. 111, 114 (1933)). As a result, "the cases sometimes appear difficult to harmonize." Id. The Court then rejected the argument that the creation or enhancement of a separate and distinct asset is a prerequisite to capitalization, explaining that "the creation of a separate and distinct asset well may be a sufficient, but not a necessary, condition to classification as a capital expenditure."

Id. at 87.  The Supreme Court went on to hold that capitalization is also required when the expenditure provides the taxpayer with significant benefits beyond the year in which the expenditure is incurred.  Id. at 87-89.  The Court cautioned, however, that "the mere presence of an incidental future benefit--'some future aspect'--may not warrant capitalization".  Id. at 87.  Applying these principles to the case at hand, we must inquire into the duration and extent of any benefits that petitioner received as a result of its $20 million contribution to the VEBA II trust in 1985.  See Black Hills Corp. v. Commissioner, 73 F.3d 799, 806 (8th Cir. 1996), affg. 102 T.C. 505 (1994); A.E. Staley Manufacturing Co. v. Commissioner, 105 T.C. 166, 194 (1995).

Petitioner has provided its employees with fixed paid holidays for the past 150 years.  This holiday pay was a quid pro quo for the employees' services.  Petitioner's employees were paid for a designated holiday only if they were employed by petitioner on the working days immediately preceding and following the holiday.

Through its contribution to the VEBA II trust, petitioner effectively prefunded a substantial portion of its anticipated holiday pay obligations for many years to come.  Petitioner's own expert witness, Stanley B. Rossman, opined that petitioner's $20 million contribution in 1985 was sufficient to pay holiday pay benefits for 8 to 10 years.  Mr. Rossman assumed that both income and principal from VEBA II would be used to fund the full amount

of petitioner's annual holiday pay obligations.  We believe this is a very conservative estimate considering the fact that average annual holiday pay covered by the plan for the years 1986 through 1994 was approximately $2 million.  At that rate, the $20 million fund would last for 10 years even if it generated no investment income.  In fact, investment earnings from VEBA II have covered over 80 percent of petitioner's holiday pay obligations between 1986 and 1994.[10]

Petitioner, nevertheless, argues that its contribution should be deductible because it is the employees, rather than petitioner, who benefited from the creation of the VEBA and that any future benefit to petitioner was merely incidental.  In support of its position, petitioner relies on two prior decisions of this Court in which we permitted employers to deduct VEBA contributions pursuant to section 162(a).

In Moser v. Commissioner, T.C. Memo. 1989-142, affd. on other grounds 914 F.2d 1040 (8th Cir. 1990), we held that a corporation was entitled to a deduction pursuant to section 162(a) for a $200,000 contribution to a VEBA created to provide members with death benefits, sick and accident benefits, and

_____

[10]Petitioner has avoided using any of the original principal to pay its holiday pay obligations.  Since 1987, the annual investment earnings from the VEBA II trust have been insufficient to cover the total annual cost of petitioner's holiday pay obligations.  To make up the difference, petitioner has either transferred funds from VEBA I or VEBA III or funded the difference itself.

severance pay benefits.  Since the benefits provided by the VEBA were commensurate with the salaries and ages of its members, we rejected the Commissioner's initial argument that the VEBA was actually nothing more than a private investment fund created for the benefit of petitioner's president, Berkley B. Strothman, and his wife.

In addition, we determined that the Strothmans did not possess "total unfettered control" over the VEBA's assets, despite the fact that the Strothmans, via their controlling interest in the employer-corporation, could effect amendments or termination of the VEBA.  We explained:

> "We realize the [employer] could at any time terminate or alter the plan although the monies of the trust could never revert to or inure to the [employer's] benefit.  This minimal retention of control is not sufficient to make the benefits of the plan in any way illusory.  Employers need to retain rights to alter or terminate plans to meet the changing needs of the employees and employer.  This flexibility may be required with numerous types of plans including the medical, vacation and other welfare benefit plans specified by regulation."  * * *  [Moser v. Commissioner, T.C. Memo. 1989-142 (quoting Greensboro Pathology Associates, P.A. v. United States, 698 F.2d 1196, 1203 n.6 (Fed. Cir. 1982)).]

A critical inquiry, therefore, was whether the funds in the plan could ever revert to the employer, and this question was "integrally related" to any analysis of whether the plan was truly a "welfare or other similar benefit plan" to which contributions are deductible by employers as ordinary and

necessary business expenses pursuant to section 162(a). Our review of the plan documents in question indicated that the reversion of any assets from the VEBA was clearly prohibited.

Finally, in Moser v. Commissioner, supra, we disagreed with the Commissioner's argument that the corporation's contribution was excessive, and, therefore, the corporation should not be allowed a deduction for the full amount. The corporation's $200,000 contribution was based on calculations made by a financial consultant to ascertain the full amount of all potential severance benefits and the life insurance and medical insurance premiums that were necessary to fund death, disability, and accident benefits for 1 year. We found that the corporation's original $200,000 contribution had "provided for full funding of the severance benefits and generated income sufficient to fund the annual costs of providing VEBA benefits - no more, no less." Moser v. Commissioner, supra.

In Schneider v. Commissioner, T.C. Memo. 1992-24, we held that a personal service corporation was entitled to deduct contributions made to three employee welfare benefit plans established to provide death, disability, and termination benefits to employees and educational benefits to the children of eligible employees. The Commissioner argued that the contributions at issue were capital expenditures because they created a benefit for the taxpayer that lasted substantially beyond the taxable year in which the contributions were made.

At the outset, this Court explained that "We have traditionally analyzed the deductibility of an employer's contributions to a welfare benefit plan by taking into consideration, among other things, both the degree of control which an employer retains over the plan and the degree to which the employees, as opposed to the employer, are benefited." Schneider v. Commissioner, supra; see also Weil Clothing Co. v. Commissioner, 13 T.C. 873, 879-880 (1949). Regarding the first consideration, we stated that in the context of an employee benefit plan, an employer does not necessarily retain too much control when it retains the right to terminate or alter the plan, so long as the funds in the plan may never revert to or inure to the benefit of the employer. Schneider v. Commissioner, supra. Similarly, concerning the second consideration, we stated that the employer's contributions must directly benefit its employees rather than the employer.[11] With respect to taxpayer contributions that produce future benefits for the taxpayer, we stated:

> if an expenditure results in a substantial benefit to
> the taxpayer, as distinguished from an incidental
> benefit, which can be expected to produce returns to

_____

[11]See Anesthesia Serv. Medical Group, Inc. v. Commissioner, 85 T.C. 1031, 1044-1045 (1985), affd. 825 F.2d 241 (9th Cir. 1987) (holding that a trust established to provide protection against the malpractice claims of the employer's physician-employees was concerned primarily with the interests of the employer, which was jointly and severally liable for the negligence of its employees).

the taxpayer for a period of time in the future, then
the expenditure is deemed capital and cannot be
currently deducted.  See National Starch & Chemical
Corp. v. Commissioner, 918 F.2d 426 (3d Cir. 1990),
affg. 93 T.C. 67 (1989), cert. granted INDOPCO, Inc. v.
Commissioner, 500 U.S. ___, 59 U.S.L.W. 3769 (May 13,
1991).  [Schneider v. Commissioner, supra.]

Applying these principles to the facts in Schneider v.

Commissioner, supra, we determined that the taxpayer was entitled

to a deduction pursuant to section 162(a).  First, we found that

the assets contributed by the employer were held in trust to

provide the benefits discussed above, and none of the employee

benefit plans allowed for the reversion of assets to the employer

in the event the plan was amended or terminated.

Second, we found that the employer's contributions to these

plans directly benefited its employees and that any future

benefit that the employer would derive from its contributions was

based solely on the expectation that its employees were more

likely to remain loyal and perform to the best of their abilities

if their economic needs were satisfied.  In our view, such a

benefit was only an incidental or indirect benefit, and therefore

not controlling.  See Weil v. Commissioner, supra at 879-880;

Elgin Natl. Watch Co. v. Commissioner, 17 B.T.A. 339, 358 (1929),

affd. 66 F.2d 344 (7th Cir. 1933).

We also rejected the Commissioner's argument that the

taxpayer's contributions were essentially prepaid expenses, which

were required to be capitalized.  We found that the annual

contributions were computed by an independent actuary who determined the amounts necessary to fund the plans for 1 year. We concluded that "the evidence in this case supports petitioner's contention that its contribution to each plan for a particular year relates only to the year in which the payment was made." Schneider v. Commissioner, supra.

In our view, Moser v. Commissioner, T.C. Memo. 1989-142, and Schneider v. Commissioner, supra, are distinguishable from the case at hand. The critical distinctions involve the particular nature of the benefits funded as well as their permanence and extent. See INDOPCO, Inc. v. Commissioner, 503 U.S. at 87; A.E. Staley Manufacturing Co. v. Commissioner, 105 T.C. at 194-195.

The benefit plans at issue in Moser v. Commissioner, supra, and Schneider v. Commissioner, supra, funded death, disability, and severance benefits for the employees and, in Schneider, educational benefits for the employees' children. The most significant benefits payable under the plans involved in Moser and Schneider were payable to employees upon the occurrence of an event, which would terminate their services for the employer. Employer contributions to these plans tended to boost employee morale, but we found that the employer's only benefit was its expectation that its employees were more likely to remain loyal and perform to the best of their abilities. Schneider v. Commissioner, T.C. Memo. 1992-24. As a result, we found that these benefits provided the employer with only incidental or

indirect future benefits, which do not require capitalization. See INDOPCO, Inc. v. Commissioner, supra at 87.

In contrast, VEBA II was the funding medium for petitioner's future holiday pay obligations. These future obligations were contingent upon the future performance of services by petitioner's employees. Holiday pay is closely akin to salary, the most basic obligation any employer undertakes. The $20 million contribution to VEBA II provided funds to reimburse petitioner for holiday pay obligations that it expected to incur for many years into the future.

The employees in Moser v. Commissioner, supra, and Schneider v. Commissioner, supra, generally had a vested right to the severance, disability, or death benefits at the time the employer made the contribution. The occurrence of a qualifying event, such as the death, disability, or termination of an employee, entitled the employee to benefits regardless of the fact that the employee would no longer be providing services to the employer. In contrast, the creation of the VEBA II trust to fund holiday pay benefits did not provide petitioner's employees with a vested right to future holiday pay. Petitioner could reduce its holiday pay benefits or even liquidate the VEBA II trust without incurring any liability to its employees for future holiday pay.[12] The right to holiday pay did not vest unless and until an

---

[12]On Jan. 1, 1995, petitioner adopted a new "paid time away

(continued...)

employee was employed by petitioner on the working days immediately preceding and following the holiday. Thus, the prefunding of petitioner's future holiday pay obligations was inextricably linked to acquiring the future benefits that petitioner would reap from its employees' services in subsequent years.

In Moser v. Commissioner, supra, the contribution was an amount that provided for full funding of the vested severance benefits. This funding also generated income sufficient to pay relatively small annual insurance premiums for other VEBA benefits. In Schneider v. Commissioner, supra, the taxpayer's contribution to each plan for a particular year related only to the year in which the payment was made. Petitioner's contribution, on the other hand, did not fund benefits that were already vested and was not calculated to fund benefits for a specific period. Petitioner established VEBA II to prefund its holiday pay obligations for many years, and the future benefits from this prefunding were far from incidental. Between 1986 and 1994, petitioner's annual holiday pay expenses covered by the plan ranged from approximately $1.5 million to $2.2 million. Petitioner's original $20 million contribution produced investment earnings sufficient to cover over 80 percent of these

---

[12](...continued)
from work policy". As a result, only 6 holidays are now covered under the holiday pay plan and funded through the VEBA II trust.

expenses.  It is clear that petitioner's $20 million contribution to VEBA II for the purpose of funding its future holiday pay obligations resulted in a substantial future benefit. Contributions that provide taxpayers with substantial, as opposed to merely incidental, future benefits must be capitalized. INDOPCO, Inc. v. Commissioner, supra at 87.

Nevertheless, petitioner contends that deductions of this sort must necessarily be allowed for taxable years prior to 1986. Petitioner argues that Congress enacted sections 419 and 419A, applicable to years after 1985, to prohibit the type of deduction at issue here.  Sections 419 and 419A generally restrict deductions for contributions made to welfare benefit funds to the year that benefits are actually paid out to employees.  See Schneider v. Commissioner, supra.  Petitioner points to a discussion at the end of our opinion in Schneider v. Commissioner, supra, where we rejected the Commissioner's argument that the taxpayer's contributions were not deductible until paid out by the plans as benefits.  We remarked that "the statute [section 162] was amended by the enactment of sections 419 and 419A to bring about that result in the case of contributions made after 1985", Schneider v. Commissioner, supra, and we quoted from the House report, which explained that the enactments resulted from Congress' belief "'that the current rules under which employers may take deductions for plan contributions far in advance of when the benefits are paid allows

excessive tax-free accumulation of funds.'"  Schneider v.
Commissioner, supra (quoting H. Rept. 98-432 (Pt. 2), at 1275
(1984)).  We also referred to the conference report accompanying
the enactment of sections 419 and 419A, which stated that "'An
employer's contribution to a fund that is a part of a welfare
benefit plan may be deductible in the year it is made rather than
at the time the benefit is provided.'"  Schneider v.
Commissioner, supra (quoting H. Conf. Rept. 98-861, at 1154
(1984), 1984-3 C.B. (Vol. 2) 408).

The discussion of sections 419 and 419A in Schneider v.
Commissioner, supra, is not inconsistent with our holding in the
instant case.  Under the law applicable to pre-1986 years, there
simply was no requirement that deductions for contributions to
VEBA's be delayed until benefits were actually paid to the
employees.  Sections 419 and 419A imposed this requirement for
contributions made after 1985.  However, as we recognized in
Schneider, there had always been a requirement that an
expenditure be capitalized if the expenditure provided the
taxpayer with substantial future benefits.  In Schneider v.
Commissioner, supra, we found that the expenditures in issue had
not provided the taxpayer with substantial future benefits.  In
the instant case, we have found that petitioner's contribution to
VEBA II did result in substantial future benefits.  Our decision
today, therefore, is consistent with Schneider v. Commissioner,
supra, and the state of the law in 1985.  As the Supreme Court

explained in <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. at 86-87, it was not articulating any new legal standard in holding that capitalization is required when expenditures provide the taxpayer with significant future benefits.

Petitioner has failed to prove that its $20 million contribution to VEBA II in 1985 constitutes an ordinary and necessary business expense pursuant to section 162(a).  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, <u>supra</u> at 84.  Respondent's determination is, therefore, sustained.

<u>Decision will be entered</u>

<u>for respondent</u>.